EDMUND CAPALDO, PLAINTIFF-RESPONDENT, v. NORMA REIMER, DEFENDANT-APPELLANT.

ALBERT F. GERMAINE, PLAINTIFF-RESPONDENT, v. NORMA REIMER, DEFENDANT-APPELLANT, AND EDMUND CAPALDO, DEFENDANT-RESPONDENT.

Argued April 1, 1963—Decided June 3, 1963.

*Mr. Jerome S. Lieb* argued the cause for defendant-appellant Norma Reimer (*Messrs. Harkavy & Lieb,* attorneys; *Mr. Ronald M. Sturtz,* on the brief).

*Mr. Robert N. Wilentz* argued the cause for plaintiff-respondent, Edmund Capaldo. (*Messrs. Weiner, Weiner & Glennon,* attorneys; *Messrs. Wilentz, Goldman & Spitzer,* of counsel; *Mr. Robert N. Wilentz,* on the brief).

No appearance was made on behalf of plaintiff-respondent Albert F. Germaine.

The opinion of the court was delivered by

PROCTOR, J.  This is a negligence case arising out of a collision between an automobile operated by the defendant Norma Reimer and a panel truck operated by the plaintiff Edmund Capaldo in which the plaintiff Albert Germaine was a passenger.  Germaine filed a complaint to recover for his personal injuries against Capaldo, Mrs. Reimer and her husband Howard, owner of the automobile.  The Reimers, *inter alia*, denied negligence on their part and cross-claimed against Capaldo under the Joint Tortfeasors Contribution Law, *N. J. S. A.* 2A:53A–1 *et seq., N. J. S. A.*  Capaldo thereafter filed a separate personal injury complaint against the Reimers and the actions were consolidated for trial.  Pursuant to *R. R.* 4:43–2(b), the trial court ordered that the issue of liability be severed and tried first.  The jury found that the accident was caused by the sole negligence of Mrs. Reimer, but that she was not acting as agent of her husband at the time. Following the entry of an interlocutory judgment of liability based upon that finding, the Appellate Division granted Mrs. Reimer's motion for leave to appeal pursuant to *R. R.* 2:2–3. It thereafter affirmed the judgment.  *Capaldo v. Reimer*, 77 *N. J. Super.* 215 (*App. Div.* 1962).  We granted Mrs. Reimer's petition for certification.  39 *N. J.* 135 (1963).

The collision occurred on September 9, 1958, at about 3:15 P. M.  Both vehicles were proceeding in a northerly direction on Pleasant Valley Way, West Orange, which is a macadam road about 30 feet wide with a double white line down the middle and a 5-foot gravel shoulder on each side.  Capaldo, who was employed by the Jaeger & Germaine Oil Company, testified that he intended to make a service call at a house on the easterly, or right-hand, side of Pleasant Valley Way; that when he was about 100 feet from the driveway of the house, proceeding at the rate of about 25 miles per hour, he gave a right-hand turn signal with the mechanical lights of the truck; and that he then slowed down and turned into the driveway.  When about one-third of the truck had entered the driveway, it was struck on its right side near the rear

by the Reimer vehicle. Capaldo denied that his truck at any time veered to the left before entering the driveway.

Germaine supported Capaldo's version of the accident. However, on cross-examination it developed that Germaine's direct testimony differed substantially from his pretrial deposition. There, Germaine had testified that when Capaldo was "twenty-five or thirty feet" from the driveway, traveling "fifteen, twenty miles an hour," he "pulled, perhaps, four or five foot to the left" to make a turn into the driveway, and that in executing this maneuver Capaldo first made "a left turn signal when he began to swing to the left" and then made a right turn signal "when he began to make his turn to the right" into the driveway.

Mrs. Reimer testified that she was proceeding in the same direction and at the same rate of speed as the truck, about 100 to 200 feet to the rear of it. She was accompanied by her four children, the oldest of whom was 8½ years of age. Two of the children were seated alongside Mrs. Reimer and two were in the back seat. She was driving in the center of the northbound lane; the truck was proceeding somewhat closer to the center white line. She said that the truck then slowed down and bore so far to its left that its "right tires were on the white line." Thinking that the truck's change of course and speed indicated that the driver intended to enter a driveway on the westerly, or left-hand, side of the road, she continued at her same rate of speed. She further testified that "the next thing that I knew he had turned right in front of me; and well, I immediately realized that I couldn't get out of his way so I took my foot off the gas and put it on the brake. And, of course, my concern was for my children that were on the front seat, and there was no place to go." She "extended her right arm sideways, to the right" to protect her children, and the collision followed. On cross-examination, Mrs. Reimer testified that when Capaldo "first made his right turn into the driveway," she was "approximately one hundred feet" away from him, and that she did not see "any signals of any kind at all from the vehicle."

In the trial court's charge to the jury, it omitted any reference to the meaning or application of the concept of proximate cause. At the conclusion of the charge, defense counsel objected to the omission at side bar and the trial court agreed to charge on that subject. However, the court prefaced its charge on proximate cause with the following remarks:

"I have been asked to charge you further on a subject which I thought that I had covered sufficiently without specifically using the words, proximate causation, two words in the law that I detest and consider largely meaningless."

On Mrs. Reimer's appeal to the Appellate Division, her principal argument for reversal was that when the trial court undertook to charge proximate cause at her request, its above-quoted prefatory remarks negated the effectiveness of the charge, and that:

"The natural reaction of a lay jury, upon being told that what they were about to be instructed as the law, was considered by their instructor as something he detested and something considered largely meaningless, could only be to dismiss the issue entirely from their deliberations. This is particularly true where the issue arose, as here as an apparent afterthought upon a supplemental charge."

The Appellate Division was in "complete agreement with defendant's criticism of the trial court's gratuitous observation that proximate causation are two words in the law he 'detests' and considers 'largely meaningless.'" 77 *N. J. Super.*, at *p.* 220. However, the Appellate Division affirmed the judgment of the trial court, stating that in this case "the only rational conclusion to be drawn from the facts is that an accident happened as the result of the negligence of one or the other, or both of the parties," and hence "the failure to charge proximate cause, * * * is not reversible under *R. R.* 1:5–3(b)." *Id.,* at *p.* 221.

Among other arguments raised on her appeal to this court, Mrs. Reimer renews her contention that the trial court in effect withdrew the issue of proximate cause from the jury, and she further contends that the Appellate Division erred in determining that such withdrawal did not prejudice her rights.

We agree with the Appellate Division that the defendant was justified in her criticism of the remarks with which the trial court prefaced its charge on proximate cause. A jury is not an appropriate audience to hear a trial judge disparage a principle of law when at the same time the jury is instructed to apply that principle to the case.

We also agree with the Appellate Division's conclusion that though the effect of the trial court's remarks was to withdraw the issue of proximate cause from the jury, such withdrawal did not cause prejudice to Mrs. Reimer. The trial court, in its main charge, instructed the jury that in order to return a verdict of liability against Mrs. Reimer it must find that she was negligent and that such negligence caused or contributed to the cause of the accident. In the circumstances of this case, there was nothing which would have justified the jury, having found both of those elements to exist with respect to her conduct, in concluding that such conduct was not a proximate cause of the collision. See *Vanto v. Juneman,* 111 *N. J. L.* 18 (*E. & A.* 1933); *Altieri v. Public Service Railway Co.,* 103 *N. J. L.* 351 (*E. & A.* 1927); *Carey v. Deems,* 101 *N. J. L.* 419 (*Sup. Ct.* 1925). There is no suggestion in the record before us that there were other factors, over which Mrs. Reimer had no control, which may have intervened in the chain of causation sufficiently to relieve her from liability. The present case is readily distinguishable from *Kreis v. Owens,* 38 *N. J. Super.* 148 (*App. Div.* 1955), and *Barr v. Francks,* 70 *N. J. Super.* 565 (*App. Div.* 1961), relied on by Mrs. Reimer, where the appearance of such intervening factors raised serious questions respecting the proper allocation of responsibility for the resultant injuries.

Mrs. Reimer further contends that the following portion of the trial court's charge, to which she objected at trial, was erroneous and prejudicial:

"If this truck turned from the right lane to the right and the turn was commenced when Mr. Reimer [*sic* Mrs. Reimer] was one hundred feet behind, driving at twenty-five to thirty miles per hour, you may find, *in fact you must find,* that it was her duty to see the movement

and to stop before striking the truck. You certainly may find, if you find those to be the facts, that Mrs. Reimer was negligent." (Emphasis added)

She argues that by the above-quoted part of its charge, the trial court, in effect, improperly directed a verdict against her if the jury were to find the specified facts. This contention was raised by Mrs. Reimer as a reason for allowance of her interlocutory appeal. It was also embodied in a separate question presented (although not in a separate point heading) and pressed as a reason for reversal in her brief on appeal to the Appellate Division. The contention was again raised in her petition for certification. Moreover, without any suggestion that it went beyond the point headings, the plaintiff Capaldo answered the contention in his Appellate Division brief. By leave of this court, no further briefs were filed.

██ We think the challenged part of the charge had the capacity to mislead the jury into the belief that they were compelled to find Mrs. Reimer negligent if she was "one hundred feet behind, driving at twenty-five to thirty miles per hour" when Capaldo commenced his turn "from the right lane to the right." The trial court had previously instructed the jury that one of the versions (Germaine's) of the manner in which Capaldo made his right turn was that the truck "pulled four or five feet to the left in the right hand lane before making the turn." Mrs. Reimer had contended that the movement of the truck to the left misled her to believe that the truck was going to turn to the left. The challenged instruction, premised on a finding that the truck "turned from the right lane to the right," did not exclude the possibility of the misleading swing to the left *within* the right-hand lane. Moreover, although Capaldo testified he gave a proper right-turn signal before making the turn, Mrs. Reimer testified that she saw no signal of any kind. *N. J. S. A.* 39:4–126 provides that no person shall turn a vehicle to enter a private driveway, where other traffic may be affected by such movement, without giving an appropriate signal "continuously during not less than the last 100 feet traveled by the vehicle

before turning." By this statutory standard of conduct, a driver of a vehicle following another may reasonably expect to be alerted by a turn signal, given continuously for at least 100 feet, before the forward vehicle turns off the road into a driveway. Thus, a jury could find that if Mrs. Reimer was following Capaldo at a distance of 100 feet, she could reasonably have expected, if Capaldo was going to turn to the right, that he would signal his intention to do so when she was 200 feet from the driveway. Under the court's instruction, which made no mention of Capaldo's duty to signal his intention to make a turn, the jury was compelled to find Mrs. Reimer negligent for failing to stop after having received warning of the intended turn at a point when she was only 100 feet from the driveway. Indeed, the only warning mentioned in the challenged part of the charge was the commencement of the turn itself. Certainly, a jury could find that such a warning could not be expected to invoke as quick a response as would a proper hand or mechanical signal, and hence a jury could find that by the time Mrs. Reimer was alerted to the fact that the truck's movement indicated an intent to turn into the driveway, less than 100 feet would remain in which she could stop her automobile. In these circumstances, we cannot say as a matter of law that Mrs. Reimer would be under a duty to stop her automobile before striking the truck, merely because she was 100 feet away when Capaldo commenced his turn.

Therefore, we conclude that the trial court's charge respecting Mrs. Reimer's negligence was error. In view of Mrs. Reimer's own testimony that she was 100 feet behind Capaldo when he commenced his turn, the prejudicial effect of the charge is apparent. Hence, the judgment must be reversed and the matter remanded for a new trial.

JACOBS and SCHETTINO, JJ. (dissenting). This was an ordinary accident case which involved no legal or factual complexities and turned on matters of credibility—all else was gloss. Capaldo was making a right turn into a driveway and

when one-third of his truck was within the driveway, it was struck on the rear right by Mrs. Reimer's car. Capaldo testified that when he was about 100 feet from the driveway, he gave a right-hand turn signal with the directional lights of his truck, and his testimony was supported at the trial by his passenger Germaine. Mrs. Reimer testified that when she was about 100 or 200 feet behind the Capaldo truck she saw it slow down, bear to its left and then turn into the driveway, and that she saw no right-turn signal. After properly defining negligence, the court throughout its charge repeatedly told the jury that if both Capaldo and Mrs. Reimer were negligent, they would be liable to the passenger but not to each other, that if Capaldo were alone negligent, he would be liable to the passenger and to Mrs. Reimer, and that if Mrs. Reimer were alone negligent, she would be liable to the passenger and Capaldo. *Cf.* Hardin, "An American Lawyer Looks at Civil Jury Trial in Scotland," 111 *U. Pa. L. Rev.* 739, 757 (1963); *Joiner, Civil Justice and The Jury* 84 (1962).

The jury made the deliberate finding "that the accident was caused by the negligence of Mrs. Reimer alone." In reaching its result it undoubtedly accepted Capaldo's testimony (as it had the perfect right to do) that he had made a proper turn with a proper signal. The incidental expression in the charge upon which the majority relies for its reversal could not have affected the jury's determination on matters of credibility and, in the light of the entire charge and all of the circumstances, we fail to see how it can fairly be viewed as constituting harmful error within the purport of our court rules. See *R. R.* 1:5–3(b); *Meszaros v. Gransamer*, 23 *N. J.* 179, 189 (1957). See also 77 *N. J. Super.*, at *p.* 222:

"The simple tack of the jury was to determine which, if either, of the versions presented by the respective parties was the more credible. This decided, the verdict passed naturally, and as a matter of course."

It is worthy of note that when Mrs. Reimer appealed to the Appellate Division she set forth only three point headings in her brief. The first objected to the trial court's treatment of

"proximate cause," the second to its refusal to submit the passenger's "contributory negligence" to the jury, and the third to its charge bearing on the violation of "traffic regulations." These three issues were comprehensively dealt with and were properly disposed of by the Appellate Division (77 *N. J. Super.*, at *pp.* 221–223) ; it found no occasion to deal with any of the subordinate comments in the appellant's brief which were not at all embraced in the points submitted by her for argument and determination. See *R. R.* 1:7–1(e).

The appellant had a fair trial in the Law Division and a full appeal in the Appellate Division. Thereafter, she applied for and was granted certification, though her case was clearly not within the important situations contemplated by *R. R.* 1:10–2. *Cf.* Frankfurter, J., dissenting in *Rogers v. Missouri Pac. R. Co.,* 352 *U. S.* 500, 524, 77 *S. Ct.* 443, 459, 1 *L. Ed.* 2d 493, 520 (1957). Now, almost five years after the accident, the parties (including the innocent passenger) are told to start all over again because of an incidental expression in the charge which the record indicates did no harm and which was not even referred to in the points set forth in the appellant's brief on appeal. It seems indeed regrettable that the cautions in *Meszaros v. Gransamer, supra,* still require reassertion within our State:

"Throughout history the ever present goal has been to attain a better system of justice which affords to every person a fair, inexpensive and speedy trial, unshackled by needless technicality and formalism. This goal is frustrated by every new trial for a procedural error which did not impair the fairness of the first trial nor the justness of the original verdict. In this day there should be ready recognition of the absence of justification for such new trial except in the unusual instance where it is really essential to insure future observance of a prescribed practice safeguard or the vindication of a fundamental principle. It will not suffice that we have solemnly set forth in a formal practice rule (*R. R.* 1:5–3(b)) that a new trial will not be granted 'unless a denial of the relief sought appears to the court to be inconsistent with substantial justice'; as Professor Sunderland properly pointed out almost 30 years ago, we must go further and always interpret and apply the rule with sympathetic understanding that trial procedure is not the end in itself but is merely the vehicle for attaining justice:

'The problem of prejudicial error is a problem in professional psychology. No rules can be framed which will solve it, for rules can only be drawn in general terms, and it is in the interpretation of the rules that the difficulty comes * * * The only permanent and effective cure for technicality in this respect is a better conception of the purpose of all procedure. In England in the year 1924 not a single case from the King's Bench Division was reversed for error in admitting or excluding evidence. That simple fact explains why the intricacies of practice no longer annoy the English lawyer. And it explains the success of the whole judicial establishment. Procedure has become a practical means to an end. Its rules are no more exacting than efficiency requires. * * * Every judgment which is reversed merely because obtained contrary to rules, shows a failure of the courts to serve the main purpose of their existence.' *Sunderland, "The Problem of Appellate Review," 5 Texas L. Rev.* 126, 146 (1927)." 23 *N. J.*, at *pp.* 189–190.

We would affirm.

*For reversal* — Chief Justice WEINTRAUB, and Justices FRANCIS, PROCTOR, HALL and HANEMAN—5.

*For affirmance*—Justices JACOBS and SCHETTINO—2.