282 N.J. Super. 1 (1995)
659 A.2d 471
RICHARD ALLEN PARKS, GENERAL ADMIN. AND ADMIN. AD PROSEQUENDUM OF THE ESTATE OF RICHARD PARKS, JR., PLAINTIFF-RESPONDENT,
v.
PEP BOYS, PATRICIA STALLWORTH, TAMMY SPITZNER (FORMERLY TAMMY SCHOCHET), DONNA MONETTI, BARRY STEELE, MICHAEL MCTAMNEY, AND STEVEN GREENBERG (ALL AGENTS, SERVANTS, OR EMPLOYEES OF DEFENDANT, PEP BOYS), DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 10, 1995.
Decided May 19, 1995.
*4 Before Judges DREIER, VILLANUEVA and BRAITHWAITE.
Lawrence Berg argued the cause for appellants (Marshall, Dennehey, Warner, Coleman & Goggin, attorneys; Mr. Berg, on the brief).
Daniel M. Waldman argued the cause for respondent (Waldman, Moriarty & McGann, attorneys; Mr. Waldman, of counsel and on the brief, and Michael E. McGann, on the brief).
Alfred Abbotts submitted a brief on behalf of amicus curiae CIGNA Indemnity Ins. Co. of North America, CIGNA Property and Casualty Cos. (K. Ruth Larson, attorney; Edward C. McHugh, of counsel).
The opinion of the court was delivered by DREIER, P.J.A.D.
Defendants, Pep Boys and its employees, appeal on leave granted from the denial of their summary judgment motion to dismiss plaintiff's compensatory and punitive damage claims. Plaintiff, Richard A. Parks, general administrator and administrator ad *5 prosequendum of the Estate of Richard Parks, Jr., filed a wrongful death and survival complaint on October 9, 1991, claiming compensatory and punitive damages against defendants, Pep Boys and its employees, stemming from the death of Richard Parks, Jr. We granted leave for the filing of an amicus curiae brief by CIGNA Indemnity Insurance Company of North America which is a party in a declaratory judgment action that has been consolidated with this case.
On May 25, 1990, the decedent, Richard Parks, Jr., his younger brother and another boy decided to purchase freon because the brother had heard that it could "get you high." At that time, decedent was seventeen years old, the brother was fifteen, and the third boy was fourteen.
The three youngsters tried unsuccessfully to purchase the freon at a Channel store and perhaps a lumber yard that did not carry the product. They then proceeded to the Pep Boys store in Howell Township, New Jersey because it is an auto parts store, and the brother knew that it would carry freon which is used in automobile air conditioning systems. They pooled their money to buy as many cans of No. 12 freon as they could afford.
The youngsters determined that the third boy should make the purchase since he had a mustache and looked older than his age, and the brother was afraid to make the purchase. The third boy purchased two cans of freon from the cashier who did not question him about his age or the purpose of his purchase. The boy claimed that he did not see any signs restricting the sale of freon. Realizing that he had purchased the wrong kind of freon, he went back into the store to return the two cans. Patricia Stallworth, an assistant manager, (the boy recalled a male assisting him) directed him to where the freon was located and then completed the exchange for three other cans of freon. He explained to Stallworth that he needed freon without an oil additive. He again was not asked for any identification, although Stallworth had inferred that he was of age because he had been waited on before and looked older.
*6 The boy who purchased the freon left the area, and two other boys joined decedent and his brother. The two Parks youngsters and the other boys went to an area between the VFW building and a metal shop after obtaining a hose and auto air conditioner recharge kit from one of the boys. The brother stated that he saw a warning on the can about inhaling and a skull and bones but "paid no attention to it." The warning on the back of the can was contained in a small box at the bottom of the can. It stated:
WARNING!
DELIBERATE INHALATION OF THE CONTENTS IN THIS CAN IS EXTREMELY DANGEROUS. DEATH CAN OCCUR WITHOUT WARNING.
They then took turns inhaling or "huffing" the freon. Two of the boys claimed that the decedent had also inhaled freon earlier in the day.
The brother and the other boys became nauseated and stopped "huffing." Decedent, who had asthma, was told to stop inhaling, but he continued to take eight to twelve additional hits. Decedent then fell over and could not be resuscitated at the VFW or the hospital, and he died. The cause of death was "acute freon toxicity."
The Pep Boys chain of stores had a policy that it would not sell freon to anyone under 16 years of age, and anyone who was of questionable age would be required to show identification. The assistant manager knew of the policy from a training program conducted by the manager. She claimed she was told that the policy was based on state law and that she knew inhaling freon could cause a "high." The store claimed it had signs posted that the store would not sell freon to persons under sixteen years of age.
A Pep Boys "Branch Notice" of March 14, 1989 warned of the "high" created by freon that could cause death and further stated:
ALL STORES SHOULD TAKE EVERY PRECAUTION NECESSARY TO INSURE THAT YOUR STORE DOES NOT SELL REFRIGERANTS TO ANY PERSON UNDER 16 YEARS OF AGE.

*7 All managers are to make sure ALL store personnel, especially cashiers, read this notice.
POST ON YOUR STORE'S BULLETIN BOARD.
Steven Greenberg, the author of the notice, stated that the notice was prompted by information he had read about the dangers of inhaling freon and a police request not to sell it to minors. The store manager was responsible for disseminating the information in the notice, but it is unclear whether this policy was communicated to all employees orally, in writing, both or neither in the case of some employees. There is also the question of whether the Branch Notice was posted or kept in any manual.
Decedent's death brought attention to the problem of inhaling freon. The New Jersey Legislature responded by amending N.J.S.A. 2A:170-25.12 to prohibit all sales of freon to persons under the age of eighteen.
The complaint alleged causes of action for negligence for the sale of freon to a minor; a violation of a N.J.S.A. 2A:170-25.9 through 25.13 by the sale of freon to a minor; negligence in training the store's personnel; and reckless indifference by the store and its employees to the harm the freon would cause. Plaintiff included no claims under the Product Liability Act for a manufacturing defect, a design defect or a warning defect, N.J.S.A. 2A:58C-2. There thus was no claim of a defective product or an inadequate warning. We had asked that these issues be briefed when we granted leave to appeal, and the parties complied. We then received the motion judge's comprehensive supplemental opinion, as authorized by R. 2:5-6(c). It is clear that the motion judge recognized there was no claim for damages resulting from a product defect, but only for negligence or recklessness in the sale of the product. The judge also determined that "[f]reon, like gasoline, was a generic product that could be bought in many stores. The alleged problem was not the product *8 but rather its sale to a minor."[1]
The court denied defendants' two summary judgment motions, the second of which encompassed all issues including proximate cause, punitive damages and the applicability of N.J.S.A. 2A:170-25.9 to 25.13. The judge stated that he was denying the second motion because the statute put defendants on notice that the sale of freon was restricted even though the word "freon" was only later specifically added to the statute. The broad wording of the statute, "included but not limited to," did not exclude freon. Also, facts needed to be developed on the issue of proximate cause, and the judge would not in a summary judgment motion accept defendants' claim that decedent's conduct was an intervening efficient cause. There were numerous other factual questions for a jury to resolve. Specifically the judge determined that the jury should hear the issue of punitive damages.

I
Defendants assert that they are entitled to summary judgment because the violation of the store policy by selling to a person who was underage[2] was not a substantial factor in decedent's death. Rather, they claim that there was an intervening cause of decedent's death, namely the voluntary conduct of decedent who was of sufficient age and who intentionally inhaled the freon. To obtain a summary judgment, the moving party must *9 sustain "the burden of showing clearly the absence of a genuine issue of material fact." Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74, 110 A.2d 24 (1954). "All inferences of doubt are drawn against the movant in favor of the opponent of the motion." Id. at 75, 110 A.2d 24. Defendant must thus be able to demonstrate that there are no factual issues to be resolved concerning proximate cause.
In order to recover damages from a defendant, a plaintiff must prove that the defendant's negligence was a proximate cause of the plaintiff's injury. Scafidi v. Seiler, 119 N.J. 93, 101, 574 A.2d 398 (1990). Under the standard formulation, "[p]roximate cause has been defined as the efficient cause  the one that necessarily sets the other causes in operation. It is the act or omission which directly brings about the happening complained of, in the absence of which such happening would not have occurred." Capaldo v. Reimer, 77 N.J. Super. 215, 219, 185 A.2d 873 (App.Div. 1962), rev'd o.g., 40 N.J. 269, 191 A.2d 298 (1963). The proof required to establish a proximate cause does not need to be absolute but only "one of probability or likelihood." Braitman v. Overlook Terrace Corp., 132 N.J. Super. 51, 56, 332 A.2d 212 (App.Div. 1974), aff'd, 68 N.J. 368, 346 A.2d 76 (1975) (failure of landlord to replace bolt lock was a proximate cause of robbery). The injury must be a "reasonably foreseeable consequence of the negligent act." Id. at 55, 332 A.2d 212. See also Bendar v. Rosen, 247 N.J. Super. 219, 229, 588 A.2d 1264 (App.Div. 1991).
There is an important corollary to the proximate cause rule. The Supreme Court has recognized the principles of causation stated in Restatement of Torts § 432(1) (1934) that "`the actor's negligent conduct is not a substantial factor in bringing about harm to another if it would have been sustained even if the actor had not been negligent.'"[3]Kulas v. Public Serv. Elec. and Gas Co., 41 N.J. 311, 317, 196 A.2d 769 (1964). There, the question asked to determine if the company's negligence in installing *10 a gas pipe at too low a depth was a proximate cause of an explosion was: "If the service pipe had been installed at a depth of 30 to 36 inches [the proper depth], would the accident nevertheless have occurred?" Id. at 318, 196 A.2d 769. Since the excavation would have reached that depth anyway and caused the explosion, there was no proximate causation as a matter of law. Ibid.
Liquor liability cases, while not completely analogous, are instructive in their handling of the proximate cause issue. In Rappaport v. Nichols, 31 N.J. 188, 156 A.2d 1 (1959), a tavern-keeper sold alcohol to an intoxicated minor who then drove and caused a death.
[A] tortfeasor is generally held answerable for the injuries which result in the ordinary course of events from his negligence and it is generally sufficient if his negligent conduct was a substantial factor in bringing about the injuries. The fact that there were also intervening causes which were foreseeable or were normal incidents of the risk created would not relieve the tortfeasor of liability. Ordinarily these questions of proximate and intervening cause are left to the jury for its factual determination.
[Id. at 203, 156 A.2d 1 (citations omitted).]
In fact, the injury need not be caused by or to the person who obtained the illegally sold product. In Thompson v. Victor's Liquor Store, Inc., 216 N.J. Super. 202, 523 A.2d 269 (App.Div. 1987), an underage boy purchased alcohol and shared it with another underage boy who then caused an automobile accident and sued the package store. The jury needed to consider whether
the seller should have reasonably anticipated that a purchase of 12 cold cans of beer and a pint of whiskey by a single young person would be for the immediate consumption by a group of young persons, rather than by only the purchaser.
[Id. at 208, 523 A.2d 269.]
Defendant Pep Boys had issued the Branch Notice to its stores, prohibiting the sale of freon to those under the age of sixteen because of a request by the police and articles an executive had read about the dangers of freon inhalation by teenagers. As a result, signs were made, although their placement is at issue, and management gave instruction to at least some employees about limiting sales. Such instruction was acknowledged by the person *11 who exchanged the cans and finally placed the freon into the boys' hands.
Defendants assert that since decedent was above the age set in the store's policy for purchase of freon, this was an intervening cause that broke the chain of proximate cause. They claim that even if they were negligent in selling freon to the underage purchaser, decedent could have properly purchased the freon had he attempted to do so. This is similar to the question asked in Kulas v. Public Serv. Elec. and Gas Co., supra. This issue is an irrelevancy in this case, however. The question is not whether decedent would have been permitted to purchase freon had he attempted to do so. Rather, the issue is whether the sale to the underaged buyer should have put the store on notice that the intended use of the freon was to be an improper one.
Should the store personnel reasonably have assumed that the purchase of three cans of freon by an underaged purchaser indicated that the freon would be shared with others? This is a similar problem to the one we faced in Thompson v. Victor's Liquor Store, Inc., supra. It is for a jury to decide whether the store personnel should have reasonably so assumed that the freon would be shared with others who were irresponsible and likely to misuse the product. If so, this extended use by others would be a reasonably foreseeable consequence of the store's negligence. If not, then the sharing or decedent's actions would amount to an intervening efficient cause.
Defendants also assert that since alcohol is sold only for consumption and freon has legitimate purposes besides inhaling, the alcohol cases are inapposite. But consumption of alcohol by a person over twenty-one is also a legitimate purpose. Despite defendants' assertions, the possible misuse of freon was as foreseeable as the possible consumption of alcohol by the other underaged drinkers in Thompson. The stores' own Branch Notice establishes such foreseeability.
*12 The issue of proximate cause cannot usually be decided as a matter of law. It is a jury question whether abuse by decedent in these extended circumstances was reasonably foreseeable. A jury must determine if his misuse of the freon was an intervening efficient cause because it was foreseeable that one in decedent's position would misuse the freon and whether the sale to the underage person was a substantial factor in causing the injury.

II
There are two issues relating to the statute limiting the sale of products emitting toxic vapors: First, is freon encompassed by the statute? Second, is there a civil remedy for a violation of the statute?

a.
Defendants claim that because N.J.S.A. 2A:170-25.9 to 25.13 does not specifically mention freon, the statute is inapplicable to this case. At the time of the sale of freon to the minor, N.J.S.A. 2A:170-25.12 provided:
No person shall sell, or offer to sell, to any other person any container of any substance containing any chemical material having the property of releasing toxic vapors or fumes, (a) if he has a reasonable cause to suspect that the product sold, or offered for sale, will be used for the purpose set forth in section 2 of this act.

[emphasis added.]
Section 2 of the act provided:
No person shall, for the purpose of causing a condition of intoxication, inebriation, excitement, stupefaction, or the dulling of his brain or nervous system, intentionally smell or inhale the fumes from any substance containing any chemical material having the property of releasing toxic vapors or fumes....
[N.J.S.A. 2A:170-25.10.]
The definitional section provides:
As used in this act the phrase "substance containing any chemical material having the property of releasing toxic vapors or fumes" shall mean and include but not be limited to any glue ... or other chemical compounds containing one or more chemical compounds which release vapors or fumes causing a condition of intoxication, inebriation, excitement, stupefaction, or dulling of the brain or nervous system including but not limited to, the following chemical compounds....
[N.J.S.A. 2A:170-25.9 (emphasis added).]
*13 What follows is a list of chemicals that do not contain freon or the chemical names, chlorofluorocarbon or hydrochlorofluorocarbon. A violation of the act is a disorderly persons offense. N.J.S.A. 2A:170-25.13.
As noted earlier, N.J.S.A. 2A:170-25.12 was amended by L. 1993, c. 70, § 1, effective March 12, 1993, to add:

Notwithstanding the provisions of section a. of this section, no person shall sell or offer to sell to a person under 18 years of age any product containing chlorofluorocarbon or hydrochlorofluorocarbon that is used as a refrigerant.
[emphasis added.]
The Senate Law and Public Safety Committee Statement, Senate, No. 215-L. 1993, c. 70 differentiates the amendment from the original law which applied to "persons of any age." The amendment specifically makes it illegal to sell freon to anyone under the age of eighteen.
Current law (N.J.S.A. 2A:170-25.9 et seq.) already prohibits as a disorderly persons offense the intentional inhalation of toxic vapors or fumes from such products or substances as glue.... This prohibition applies to a person of any age. In addition, the law prohibits the sale of such products or substances if the seller has reasonable cause to suspect that it will be used for inhaling the vapors or fumes or if it does not contain an additive approved by the Department of Health to discourage intentional inhalation.
Defendants assert that because the list of chemicals does not include freon, it is therefore excluded. The list, however, is preceded by the words "including but not limited to." This clearly means any number of chemicals can be included although not specifically on the list. Defendants also assert that because the amendment, added after and because of decedent's death, specifically deals with prohibiting the sale of freon to persons under eighteen years of age, it can be assumed that the statute did not previously include freon. The quoted legislative history, however, explains that this amendment was passed to prohibit the sale of a specific item by the age of the purchaser. The amendment is added "notwithstanding the provisions of section a." Chemicals capable of releasing toxic vapors or fumes, including freon, can not be sold to anyone if there is "reasonable cause to suspect the *14 product sold, or offered for sale will be used" for inhalation or "intoxification, inebriation, excitement, stupefaction, or the dulling of the brain or nervous system...." There is no conflict between the original statute that applies to persons of all ages and the amendment specific to freon and persons under eighteen years of age. The interpretation and application of the statute was correctly decided by the motion judge.

b.
There is, however, no civil remedy contained in this act. Under certain circumstances a violation of a statute can generate a civil remedy even where no such remedy is included in the act. In Bortz v. Rammel, 151 N.J. Super. 312, 321, 376 A.2d 1261 (App.Div.), certif. denied, 75 N.J. 539, 384 A.2d 518 (1977), Judge Pressler cited the "multi-faceted test" governing the right to a civil remedy contained in Restatement (Second) of Torts § 874A at 65 (Tentative Draft No. 23, April 1977), which stated:
When a legislative provision proscribes or requires certain conduct for the benefit of a class of persons but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.[4]
In that case, the plaintiff had a cause of action because the test was met where there was a violation of the Construction Safety Code which was meant to protect construction workers. Ibid. Again, in Lally v. Copygraphics, 173 N.J. Super. 162, 172-73, 413 A.2d 960 (App.Div. 1980), aff'd, 85 N.J. 668, 428 A.2d 1317 (1981) the court approved of the test in a workers compensation retaliation case, although there were other considerations there. There is, however, a line of cases rejecting such remedies. See Osback v. Township of Lyndhurst, 7 N.J. 371, 375-376, 81 A.2d 721 (1951) (failure of municipality to comply with statute requiring liability insurance); Jalowiecki v. Leuc, 182 N.J. Super. 22, 29, 440 A.2d 21 *15 (App.Div. 1981) (violation of administrative regulations); Samuel D. Wasserman, Inc. v. Klahre, 24 N.J. Super. 143, 147-148, 93 A.2d 628 (App.Div. 1952) (no civil remedy was intended for a violation of the criminal mechanic's trust fund statute); Plevy v. Schaedel, 44 N.J. Super. 450, 455, 130 A.2d 910 (Law Div. 1957) (the court stated, without citation, that "civil remedies are not created in criminal laws."). The latter statement is too broad. We prefer, and here apply, the principles cited in Bortz v. Rammel, supra, and the Restatement.
The class of persons to be protected under N.J.S.A. 2A:170-25.12 includes the decedent. Although there is no civil remedy contained in the statute, the Legislature obviously intended to protect anyone who might misuse the described dangerous substances. The statute requires certain conduct, namely a merchant's refraining from selling to anyone where there is reasonable cause to suspect misuse of the product. A civil remedy is appropriate in this case to further the purpose of the statute. It assures the statute's effectiveness by further alerting sellers of the dangers of selling freon to those who would most likely misuse it.

c.
Assuming the availability of a civil remedy, plaintiff asserts that defendants violated N.J.S.A. 2A:170-25.9 to 25.12 and therefore should have liability imposed. The statutory violation is at least evidence of negligence. "[I]t has long been held in this state that while the violation of a statutory duty of care is not conclusive on the issue of negligence, it is a circumstance which the jury should consider in assessing liability." Waterson v. General Motors Corp., 111 N.J. 238, 263, 544 A.2d 357 (1988). The violation of some statutes may even be negligence. "When ... a statute specifically incorporates a common-law standard of care, a jury finding of a statutory violation constitutes a finding of negligence." Eaton v. Eaton, 119 N.J. 628, 642-43, 575 A.2d 858 (1990). See also Dolson v. Anastasia, 55 N.J. 2, 10, 258 A.2d 706 (1969).
*16 Here, the statute even prior to its amendment required that the seller must not sell the substance if there is "reasonable cause to suspect that the product" will be used as an intoxicant. The objective standard of scienter is contained in the statute itself. A sale under such a circumstance, i.e., in the face of reasonable suspicion of the product's misuse as an intoxicant, could not be made with reasonable care.[5] Thus the violation of the statute before us would be negligence, not merely evidence of negligence.

III
Defendants assert that summary judgment should not have been denied on the issue of punitive damages because its actions did not meet the necessary requirements. "In exceptional cases punitive damages are awarded as a punishment of the defendant and as a deterrent to others from following his example." DiGiovanni v. Pessel, 55 N.J. 188, 190, 260 A.2d 510 (1970). It is thus unrelated to the plaintiff's claim of injury or harm.
The type of conduct that is necessary to warrant punitive damages has been described in various, imprecise ways. In Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 477 A.2d 1224 (1984), punitive damages were assessed in an egregious intentional tort. The Supreme Court determined that
[t]o warrant a punitive award, the defendant's conduct must have been wantonly reckless or malicious. There must be an intentional wrongdoing in the sense of an "evil-minded act" or an act accompanied by a wanton and wilful disregard of the rights of another.... The key to the right to punitive damages is the wrongfulness of the intentional act.
[Id. at 49, 477 A.2d 1224.]
An earlier Court decision stated that
[s]omething more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage, such as spite or `malice,' or fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that his conduct *17 may be called wilful or wanton. Lacking this element, mere negligence, however `gross,' is generally held not to be enough.[6]
[DiGiovanni v. Pessel, supra, 55 N.J. at 190, 260 A.2d 510 (quoting Prosser on Torts § 2, at 9-10 (2d ed. 1955).]
Expanding on the previously-used terminology, the Court went on to state that punitive damages may be granted if there is a deliberate act and the defendant has "`knowledge of a high degree of probability of harm and reckless indifference to consequences.'" Id. at 191, 260 A.2d 510 (quoting Berg v. Reaction Motors Div., 37 N.J. 396, 414, 181 A.2d 487 (1962)). The defendant, however, does not have to recognize that his conduct is "extremely dangerous," but a reasonable person must know or should know that the actions are sufficiently dangerous. McLaughlin v. Rova Farms, Inc., 56 N.J. 288, 306, 266 A.2d 284 (1970).
Plaintiff also argues that punitive damages are available under the New Jersey Products Liability Act. That Act is possibly applicable to this case under the interpretation of N.J.S.A. 2A:58C-1(b)(3) that the Act applies here since the death was caused by a product, and that only the limitations of sections three and four are inapplicable. We do not have to decide this question, since the procedure in section five of the Act, N.J.S.A. 2A:58C-5, dealing with punitive damages, has been made generally applicable to all punitive damage claims. See Herman v. Sunshine Chem. Specialties, Inc., 133 N.J. 329, 346, 627 A.2d 1081 (1993); Perth Amboy Iron Works, Inc. v. American Home Assur. Co., 226 N.J. Super. 200, 227 n. 23, 543 A.2d 1020 (App.Div. 1988), aff'd o.b., 118 N.J. 249, 571 A.2d 294 (1990).
The Court in Herman also found that the existing standards for the imposition of punitive damages were likewise codified. *18 Id. at 339-340, 627 A.2d 1081. The Act requires proof that the defendant's
acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of the safety of product users, consumers, or others who foreseeably might be harmed by the product. For the purposes of this section "actual malice" means an intentional wrongdoing in the sense of an evil-minded act, and "wanton and willful disregard" means a deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such action or omission.

[N.J.S.A. 2A:58C-5 (emphasis added).]
It may be argued that defendants should have better monitored the sale of freon by asking for identification of anyone who might possibly have been under sixteen or not selling to young teenagers at all, since they knew how freon might be misused. There was, however, no proof that after defendants suspected that the purchaser was underage or that his use would be illicit, they deliberately sold him the product. Even if signs were not posted according to the store policy or not everyone was aware of the policy, defendants' actions could not, on the proof presented in opposition to the summary judgment motion, be considered as a reckless indifference to any consequences of their actions. There was no malicious or wilful conduct. Defendants' conduct only could rise to the level of negligence or even "gross" negligence (if that term retains any meaning), considering what they knew about the product and the circumstances of this sale. While it is not known who sold the boy the first cans of freon, Stallworth, who exchanged the cans, knew of the store's policy but assumed the boy was of age, since he had already purchased the first cans of freon and he looked older than his fourteen years. On these facts, plaintiff has not provided a prima facie basis for the award of punitive damages. DiGiovanni v. Pessel, supra, 55 N.J. at 190-192, 260 A.2d 510. Partial summary judgment should be entered dismissing the claim for punitive damages.
We reverse the denial of defendants' motion for partial summary judgment to dismiss the claims of punitive damages, but otherwise affirm the decision of the motion judge to deny summary judgment on the remainder of plaintiff's claims.
NOTES
[1] We need not determine whether the exclusive remedy provisions of N.J.S.A. 2A:58C-1(b)(3) and -2 apply. They can be considered inapplicable because the focus of the claim was on a negligent sale rather than on a claim that the product was not "fit, suitable or safe for its intended purpose." N.J.S.A. 2A:58C-2. Conversely, even if the Act did apply, the claims made here do not fall within any provision of the Act, and, therefore, the parties' claims are relegated to the common law in any event. See N.J.S.A. 2A:58C-1(a) and Senate Judiciary Committee Statement to Senate, No. 2805-L. 1987, c. 197. See Jurado v. Western Gear Works, 131 N.J. 375, 384, 619 A.2d 1312 (1993).
[2] For brevity's sake, we will refer to an "underage" buyer rather than to a buyer who failed to meet the store's self-imposed policy of not selling to anyone under the age of sixteen.
[3] Restatement (Second) of Torts § 432(1) (1965) is similarly worded.
[4] The final version of Restatement (Second) of Torts § 874A has only slightly different wording.
[5] The purchaser's appearance and demeanor, however, may have dispelled any "reasonable cause to suspect" improper use. The jury must first consider this issue before it can find a statutory violation.
[6] Actually, degrees of negligence have been abandoned in New Jersey. See Monaghan v. Holy Trinity Church, 275 N.J. Super. 594, 599, 646 A.2d 1130 (App.Div. 1994). However, the term "gross negligence" continues to be used to described the upper reaches of negligent conduct. See Monaghan v. Holy Trinity Church, supra, 275 N.J. Super. at 599, 646 A.2d 1130; Stuyvesant Assocs. v. Doe, 221 N.J. Super. 340, 344, 534 A.2d 448 (Law Div. 1987).