Ronald CANTOR, et al., Plaintiffs,

v.

Gregory SAPUTELLI, et al., Defendants,

and

Martin Ettin, et al., Third Party Plaintiffs,

v.

Congress Title Corporation, Third Party Defendant.

No. CIV.A.97–5666.

United States District Court, D. New Jersey.

Nov. 28, 2000.

David T. Schulick, Law Offices of David T. Shulick, Philadelphia, PA, Alan L. Frank, Frank & Rosen, Cherry Hill, NJ, for plaintiffs.

Joseph A. Venuti, Jr., Swartz, Campbell & Detweiler, Mt. Laurel, NJ, for Defendants Gregory D. Saputelli, and Gregory D. Saputelli & Associates, P.A.

Gloria B. Cherry, Braff, Harris & Sukoneck, Livingston, NJ, for Defendants Martin Ettin, and Davis, Reberkenny & Abramowitz.

John D. McQuarrie, Jr., Sheila A. Woolson, Jamieson, Moore, Peskin & Spicer, P.C., Princeton, NJ, for Third Party Defendant.

## OPINION

RODRIGUEZ, District Judge.

The above-captioned matter is before this court pursuant to three separate motions for summary judgment.

## I. BACKGROUND

### A. Factual

On or about 1977, plaintiffs Ronald Cantor, Edward Cantor, Leroy Kean, and the corporation of Cantor, Cantor and Kean (collectively, the "plaintiffs") purchased approximately fifteen acres of land in Mays Landing, Hamilton Township, New Jersey (the "Property") for $1,400,000.00. The land contained an existing apartment complex named "Hadley Woods Apartments" on approximately six acres, and the remaining almost nine acres of land was vacant (the "Vacant Land"). Plaintiffs intended to convert the existing housing units into a condominium complex and develop the Vacant Land. Plaintiffs were able to transform the existing housing units into condominiums, renaming the complex "Sandpiper Apartments," but were unsuccessful in obtaining the subdivision approval necessary to develop the Vacant Land due to the apparent unavailability of sewer permits in the area. Defendant Gregory Saputelli, Esq., ("Saputelli") was engaged to form the Sandpiper Condominium Association (the "Association"), complete the necessary documentation for the required New Jersey Department of Community Affairs registration, and prepare the units for individual sale. Before the Master Deed was recorded, however, plaintiffs were not able to subdivide the Vacant Land from the housing units, which meant that the Association would have control of the Vacant Land as well as the condominium units. Seeking to preserve their rights to the Vacant Land, plaintiffs, then in control of the Association, employed defendant Martin Ettin, Esq., ("Ettin") to draft

a 100–year Lease Agreement (the "Lease"), whereby plaintiffs would lease the Vacant Land from the Association. The Lease provided:

> The consideration for said Lease shall be the payment by [plaintiffs] to the Condominium Association of the sum of One Dollar ($1.00) per year which sum shall be prepaid plus the payment of a proportionate share of taxes based upon the proportion of acreage Section Two [(the Vacant Land)] bears to the total acreage of [the Property], multiplied by the assessment for land only as issued by the Tax Assessor of the Township of Hamilton.
>
> .    .    .    .    .
>
> This Lease Agreement shall automatically terminate effective upon the recording of evidence of subdivision approval for [the Vacant Land] ... and conveyance of the same to Sandpiper Apartments.

Plaintiffs alleged that they intended the yearly rent payment under the Lease to amount to $1.00 plus the assessment of the Vacant Land if it were a separate subdivided parcel. As soon as sewers became available in Hamilton Township, plaintiffs planned to terminate the Lease and develop the Vacant Land.

Plaintiffs proceeded to sell approximately eighty of the ninety-six condominium units to third-party purchasers (the "Purchasers"). In order to preserve their rights to the Vacant Land, plaintiffs planned to have each purchaser execute a power of attorney (the "Power of Attorney") that gave plaintiffs the right to file for a subdivision of the Vacant Land on the purchasers' behalf. Additionally, plaintiffs planned to have each Purchaser sign (1) a reconveyance agreement (the "Reconveyance Agreement"), whereby each purchaser agreed that, once subdivided, the Vacant Land would be reconveyed to plaintiffs in fee, and (2) a deed, wherein

each purchaser was informed that plaintiffs desired to reserve their right to develop the Vacant Land.

For approximately ten years, the plaintiffs paid what they believed to be their portion of the tax bill as the rent under the Lease.[1] Plaintiffs believed that, under the Lease, they were responsible for paying taxes on the Vacant Land as though the Vacant Land were subdivided from the Property. For each of those years, the Association would obtain a letter from the Hamilton Township Tax Assessor that stated what the taxes would be on the Vacant Land if it were subdivided. Plaintiffs would then pay this amount to the Association.

In 1993, the Association took the position that the correct calculation was the entire tax bill of the Property multiplied by the percentage of the Property that constituted the Vacant Land. This was significantly higher. The New Jersey Superior Court held that the Association's interpretation of the Lease was correct.

## B. Procedural

The plaintiffs filed an action in this court on November 20, 1997, alleging legal malpractice, civil conspiracy, tortious conduct, breach of fiduciary duty, and breach of contract against various parties. Plaintiffs filed a Second Amended Complaint after this court's July 8, 1998 order granted the Sandpiper Condominium Association of Mays Landing's motion to dismiss or for summary judgment, granted Charles M. Middlesworth, Esq., and Schultz & Middlesworth, P.C.'s motion to dismiss, and denied Martin Ettin, Esq., and Davis Reberkenny & Abromowitz's motion to dismiss or for summary judgment.

Filed July 31, 1998, the complaint named Saputelli and Gregory D. Saputelli & Associates, P.C. ("GSAPC") (collectively, the "Saputelli defendants") as defendants. The complaint also named Ettin and Davis, Reberkenny & Abramowitz ("DRA") (col-

---

1. There was a conveyance, which is not important to consideration of these motions, of plaintiffs' rights to the Vacant Land to third parties.

lectively, the "Ettin defendants") as defendants. The complaint contained six counts: professional negligence, breach of fiduciary duty, and breach of contract against the Ettin defendants; and professional negligence, breach of fiduciary duty, and breach of contract against the Saputelli defendants.

The Ettin defendants filed an answer to the Second Amended Complaint on August 26, 1998. In addition to asserting seventeen separate defenses, the Ettin defendants asserted crossclaims for contribution and indemnification against the Saputelli defendants. On June 16, 1999, the Ettin defendants filed a three-count Third–Party Complaint against Congress Title Corporation ("CTC"): one count for contribution and two counts for indemnity. The Ettin defendants alleged that, if they had any liability to plaintiffs, it was because CTC had failed to file the Powers of Attorney, obtained by the original purchasers, and the Reconveyance Agreement, signed by the original purchasers, with the county recording office.

CTC filed an answer. In addition to defenses, CTC asserted counterclaims and crossclaims for contribution and indemnification against both the Ettin defendants and the Saputelli defendants. The Ettin defendants answered the counterclaims and crossclaims on November 19, 1999.

On December 6, 1999, the Saputelli defendants filed an answer to CTC's counterclaims and crossclaims and asserted crossclaims for contribution and indemnification against CTC. On January 7, 2000, the Saputelli defendants filed an answer to the Second Amended Complaint. In addition to their twenty-seven separate defenses, the Saputelli defendants asserted crossclaims for contribution and indemnification against the Ettin defendants and CTC and denied liability under any and all crossclaims asserted against them.

On June 15, 2000, plaintiffs filed a motion for partial summary judgment and related motions in limine. On June 16, 2000, CTC filed a motion for summary judgment, and the Saputelli defendants filed a separate motion for summary judgment.

Before proceeding, it is necessary to clarify the pleadings. Judge Kugler's order of June 9, 1999 granted the Ettin defendants' motion to file a third-party complaint and announced two theories by which CTC could be joined to this matter. The opinion explained that the Ettin defendants moved forward with a defense of mitigation of damages and that the plaintiffs asserted a claim that the Ettin defendants were negligent in failing to file the Power of Attorney and the Reconveyance Agreement.

The pleadings, however, do not contain, and the parties have not moved to amend the pleadings to include, a claim by plaintiffs on this ground or a defense by the Ettin defendants of mitigation of damages. Because all parties have argued and sought resolution of the issues, this court will deem the pleadings amended to conform to the proofs. *See* Fed.R.Civ.P. 15(b) ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."); *see also Western Union Tel. Co. v. Topping*, 66 F.2d 1006, 1006–07 (3d Cir.1933).

Accordingly, plaintiffs' Second Amended Complaint is now deemed to contain a count by the plaintiffs against the Ettin defendants for failure to file the Power of Attorney and the Reconveyance Agreement. The Ettin defendants Answer to the Second Amended Complaint is now deemed to contain a defense of mitigation of damages.

For the reasons contained herein, CTC's motion for summary judgment will be granted in part and denied in part. A separate opinion issued even date will address the issues remaining in the party's various summary judgment motions.

## II. DISCUSSION

### A. Summary Judgment

This court will enter a summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. *Id.* In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the non-moving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. The non-moving party may not rest upon the mere allegations or denials of its pleading. *Id.; Maidenbaum v. Bally's Park Place, Inc.*, 870 F.Supp. 1254, 1258 (D.N.J.1994).

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

On a motion for summary judgment, the court does not "weigh the evidence and determine the truth of the matter, but [instead] determine[s] whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 242–43, 106 S.Ct. 2505. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992).

### B. CTC's Motion

CTC filed this summary judgment motion seeking summary judgment for all claims asserted against CTC. CTC asserts various grounds in support of this motion.

CTC argues that plaintiffs could have and can still file for subdivision of the Vacant Land regardless of whether the Power of Attorney is filed. Thus, CTC argues, it is entitled to summary judgment as a matter of law, because even if it had a duty to file and failed to file the Power of Attorney, plaintiffs have not been damaged.

Initially, the contention is incorrect. In order to terminate the Lease, plaintiffs must not only apply for a subdivision, but must also affect a subdivision and a conveyance of the Vacant Land to Sandpiper Apartments. Plaintiffs standing to bring a subdivision application does not terminate the Lease. Still, as summary judgment is proper for any issue, this court will examine the issue, argued by all parties to this litigation, of whether plaintiffs had the ability to apply for subdivision of the Vacant Land.

#### 1. Standing to Bring a Subdivision Application

Under N.J. Stat. Ann. § 40:55D–48 (1991), a "Developer" may apply for major subdivision approval. "Developer" is defined as "the legal or beneficial owner or owners of a lot or of any land proposed to be included in a proposed development,

including the holder of an option or contract to purchase, or other person having an enforceable proprietary interest in such land." N.J. Stat. Ann. § 40:55D–3 (1991 & Supp.2000). CTC argues that plaintiffs fall within the definition of "Developer."

The statutory language specifically includes the holder of an option or contract to purchase. That prong does not apply. However, this court must consider whether plaintiffs are to be construed as persons "having an enforceable proprietary interest" in the Vacant Land.

The general rule is that a lessee can be "regarded as having sufficient standing to apply in his own right for a zoning variance" for the leased property. *See* W.C. Crais III, *Zoning: Who May Apply for Variance, Special Exception, or Use Permit, or Appeal From Denial Thereof,* 89 A.L.R.2d 663 (WESTLAW through Mar. 2000); *see also Frank Hardie Adver., Inc. v. Dubuque Zoning Bd. of Adjustment,* 501 N.W.2d 521, 524–25 (Iowa 1993) (gathering cases). " '[A] lessee has generally been regarded as having sufficient standing to apply in his own right for a variance or special permit as to the leased property....' " *Frank Hardie Adver.,* 501 N.W.2d at 524 (quoting 82 Am. Jur.2d *Zoning and Planning* § 299).

Research has uncovered no New Jersey case dealing with this exact issue. Thus, this court must interpret the statute and attempt to predict how the Supreme Court of New Jersey would interpret the statute. *West v. American Tel. & Tel. Co.,* 311 U.S. 223, 236, 61 S.Ct. 179, 85 L.Ed. 139 (1940) ("[I]t is the duty of [a federal court] in every case to ascertain from all the available data what the state law is...."); *Clark v. Modern Group Ltd.,* 9 F.3d 321, 326 (3d Cir.1993) ("When the application of [state] law is not clear ... [the district court] must forecast the position the [state's] supreme court would take on the issue."); *Woodson v. AMF Leisureland Ctrs., Inc.,* 842 F.2d 699, 702 (3d Cir.1988) ("When the state courts have not spoken, the federal court must predict how the state's Supreme Court would rule when faced with that issue. Unless Congress decides that we no longer have a function to perform in diversity cases, we cannot decline to make the required prediction." (citations omitted)).

In *Ric–Cic Co. v. Bassinder,* 252 N.J.Super. 334, 599 A.2d 943, 947–48 (App.Div. 1991), the court held that a lessor was a "Developer" under N.J. Stat. Ann. § 40:55D–4. However, in *Bassinder,* the term of the lease was for 99 years and was to be renewed in perpetuity. Of importance is the court's citation with approval of *Pequinot v. Allen Cty. Bd. of Zoning Appeals,* 446 N.E.2d 1021, 1024 (Ind.App. 1983), for its holding that a lessee does have sufficient standing to apply for a zoning variance. *Bassinder,* 599 A.2d at 947.

The New Jersey Supreme Court explained the proper approach to determine a lessee's rights in *Atlantic City v. Cynwyd Investments,* 148 N.J. 55, 689 A.2d 712 (1997). In *Cynwyd,* the court held that the possessor of a 99–year lease does not have the same rights as the fee owner when it comes to negotiations in eminent domain proceedings. *Id.* at 720. However, the court explained that the lessee's rights must be determined on an individual basis depending on the rights desired:

> In some circumstances, New Jersey courts have held that ninety-nine-year lessees are equivalent to fee simple owners under the common law. However, [New Jersey courts have] declined to afford property tax exemptions to holders of ninety-nine-year leases that were not renewable.... In general, the rights of the holder of a ninety-nine-year lease depend on the contract and the legislative intent underlying the applicable statutory regime.

*Id.* at 720–21 (citations omitted); *see also Renaissance Plaza Assocs., L.P., v. Atlantic City,* 18 N.J.Tax 342, 349–50 (Tax Ct.1998) (applying the *Cynwyd* test).

Here, the lease of the land to plaintiffs was for the purpose of obtaining the zoning variance. The Lease specifies that it terminates upon subdivision approval. Thus, the Lease weighs in favor of finding standing.

Additionally, a review of the legislative intent enunciated in N.J. Stat. Ann. § 40:55D-2 (1991) reveals no conflict with finding standing in this circumstance. The legislature obviously intended 'to extend standing to those who were not fee owners, as the statute grants standing to those with a proprietary interest.

This court finds that the Supreme Court of New Jersey would hold that plaintiffs had standing and still have standing to apply for the subdivision of the Vacant Land. The filing of the Power of Attorney and the Reconveyance Agreement are of no consequence to filing the subdivision application. Summary judgment will be granted to CTC on the following issue: plaintiffs had and still have standing to apply for the subdivision of the Vacant Land from the Property.

This does not address whether plaintiffs could, in fact, obtain subdivision. For example, once the application is filed, one of the condominium unit owners, or even the Association itself, might challenge the subdivision application. With a properly filed Power of Attorney, plaintiffs could easily defeat those challenges. Additionally, the Lease does not terminate until subdivision and conveyance of the Vacant Land to Sandpiper Apartments. Without a filed Reconveyance Agreement, subsequent purchasers of the condominiums can challenge the required conveyance claiming that they had no notice. Further consideration of other issues presented by CTC is necessary to determine whether CTC is entitled to summary judgment on all claims against it.

### 2. Substantial Factor

CTC contends that it is entitled to summary judgment as a matter of law on all counts against it because it was not a substantial factor in any alleged damages to plaintiffs, thus it could not be a proximate cause of any of plaintiffs' alleged damages. CTC argues:

> Under New Jersey law, a party claiming negligence must demonstrate that the actions or inactions of another proximately caused the harm complained of. *Camp v. Jiffy Lube No. 114*, 309 N.J.Super. 305, 309, 706 A.2d 1193 (App.Div. 1998). Where there are alleged concurrent causes of action, each of the alleged negligent acts must be a "substantial factor" in bringing about the harm alleged. *Id.* at 310, 706 A.2d 1193. *See Conklin v. Hannoch Weisman*, 145 N.J. 395, 419–20, 678 A.2d 1060 (1996). This means that if the harm would have occurred regardless of the action or omission complained of, the action or omission cannot be a substantial factor in bringing about the harm. *Dawson v. Bunker Hill Plaza Assocs.*, 289 N.J.Super. 309, 326, 673 A.2d 847 (App.Div. 1996).

(CTC's Br. at 11).

While CTC has presented accurate statements of law, those statements are not entirely applicable. This statement of New Jersey law is based on New Jersey's adoption of the Restatement (Second) of Torts § 432(1). *See Kulas v. Public Serv. Elec. & Gas Co.*, 41 N.J. 311, 196 A.2d 769, 772 (1964); *Parks v. Pep Boys*, 282 N.J.Super. 1, 659 A.2d 471, 475 (App.Div. 1995).

The situation between plaintiffs and CTC, however, is more analogous to § 432(2), which states, "If two forces are actively operating, one because of the actor's negligence, the other not because of any misconduct on his part, and each of itself is sufficient to bring about harm to another, the actor's negligence may be found to be a substantial factor in bringing it about." *See* Restatement (Second) of Torts § 432(2). The classic example is described in the comment to § 432.

Two fires are negligently set by separate acts of the A and B Railway Companies in forest country during a dry season. The two fires coalesce before setting fire to C's timber land and house. The normal spread of either fire would have been sufficient to burn the house and timber. C barely escapes from his house, suffering burns while so doing. It may be found that the negligence of either the A or the B Company or of both is a substantial factor in bringing about C's harm.

Restatement (Second) of Torts § 432 cmt. d, ill. 3; *see Shackil v. Lederle Labs.*, 116 N.J. 155, 561 A.2d 511, 530 (1989) (O'Hern, J., dissenting) (citing § 432(2) with approval).

Some of CTC's arguments fall within § 432(2). For example, CTC argues that, even if it were responsible for filing the Power of Attorney or the Reconveyance Agreement, it was not responsible for filing all of them, because CTC was not the title insurance company for all of the sales of individual condominium units. It argues that plaintiff's alleged harm still would have occurred because there was no Power of Attorney or Reconveyance Agreement filed for any of the other closings.

Under § 432(2), that argument fails. If CTC was responsible for filing the Power of Attorney and the Reconveyance Agreement for some of the closings and failed to do so, it is a substantial factor in the cause of the harm, if any, to plaintiffs. Each party who was responsible for filing the Power of Attorney and the Reconveyance Agreement and who did not file those documents is a substantial factor, because the failure of any one of them would have resulted in the harm, if any, to plaintiffs. It's as though each failure to file was setting a fire. Any individual "fire" would have caused the alleged harm. Any fire, i.e. failure to file, is a substantial factor in causing plaintiff's alleged harm.

Similarly, CTC's argument that not all unit purchasers signed the Power of Attor-

ney or the Reconveyance Agreement fails under § 432(2). If CTC had performed its duty, the failure of others to discharge their duties would have caused the plaintiffs' alleged harm. If the other had discharged their duties, then the failure of CTC to file the documents would have caused the plaintiffs' alleged harm. Thus, either "fire" can be said to have caused plaintiffs' alleged harm.

As to these issues, this court will deny CTC's motion for summary judgment.

### III.  CONCLUSION

Plaintiffs are "Developers" within the meaning of N.J. Stat. Ann. § 40:55D–3 (1991 & Supp.2000). Accordingly, they had and still have standing to apply for a subdivision of the Vacant Land from the Property pursuant to N.J. Stat. Ann. § 40:55D–48 (1991). The Lease evidences the parties intention that the Vacant Land be subdivided, and the statute evidences the New Jersey Legislature's to grant standing to those who are not fee owners of land. Thus, summary judgment will be granted to CTC as to plaintiffs' ability to apply for a subdivision.

The portion of CTC' motion requesting summary judgment on whether it is a substantial factor in the alleged harm caused to plaintiffs because of any possible failure to file the Power of Attorney or the Reconveyance Agreement will be denied. CTC may be a substantial factor in the alleged harm because any failure on its part was sufficient to bring about that harm.

This still leaves CTC's issue regarding the form of the Power of Attorney for consideration. Additionally, plaintiffs' motion for summary judgment and the Saputelli defendants' motion for summary judgment must be addressed by this court. These remaining issues will be addressed in a separate opinion issued even date. An appropriate order will issue.