166 N.J. Super. 148 (1979)
399 A.2d 312
AMELIA HELEN BIXENMAN AND WILLIAM THOMAS BIXENMAN, PLAINTIFFS-APPELLANTS,
v.
CHRIST EPISCOPAL CHURCH PARISH HOUSE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 11, 1978.
Decided February 27, 1979.
*150 Before Judges FRITZ, BISCHOFF and MORGAN.
Mr. Daniel M. Waldman argued the cause for appellants (Messrs. Auerbach, Rudnick, Waldman & Ford, attorneys).
Mr. Peter W. Sachs argued the cause for respondent.
The opinion of the court was delivered by FRITZ, P.J.A.D.
There is no essential dispute with respect to the facts of the matter presented. As is appropriate in such case, the trial judge entered summary judgment. It is from this judgment in favor of defendant that plaintiffs appeal.
Amelia Bixenman, the injured plaintiff (hereafter simply plaintiff)  her husband sues per quod  is a member of the Greek Orthodox Church of Ocean County. In May 1975, and for several months prior thereto, that church, having no sanctuary of its own, was permitted to use premises owned by defendant and "loaned to them until such time as they have built and can move into their own Church." In exchange for this privilege the Greek Orthodox Church paid a nominal rental, euphemistically called a donation. Evidence that this amount did not cover the cost to defendant is uncontroverted.
Sometime during that May, Amelia had attended church services after which she had gone to the parish house. While leaving the parish house she "was caused to fall" down five steps from a platform at the door of the parish house "by a stone that was beneath my foot." In this suit she seeks damages for resulting injuries.
At the outset we observe that the serious question as to whether the accident as described demonstrated a prima facie case of negligence was not argued below or here. In fact, plaintiffs in their brief before us claim that their motion for summary judgment was "in essence, to strike the defendant respondent's defense of charitable immunity," and that "defendant respondent was cross-moving to establish charitable *151 immunity in the defendant respondent." While neither party has favored us with the motion papers, the motion below was argued by both parties solely on the ground of charitable immunity vel non under N.J.S.A. 2A:53A-7 and we confine our review to this aspect.
Plaintiffs argue first that the leasing of the church property or the giving of it to another for its use is not within the ambit of the "performance of the charitable objectives for which [the lending or leasing church] was organized" and therefore plaintiff could not have been a "beneficiary * * * of the works" of that church. We reject this argument out of hand. It seems perfectly apparent to us that the facilitating of the worship of the Deity, albeit by others than their own parishioners, even those of a different Christian denomination or, for that matter, a different faith, is among the foremost of the religious, charitable and educational works for which a church exists and that such effort comes well within the statutory intendment. No less confining a definition was proposed by the recognition of the "propagation of religion" as an appropriate criterion of the church as a "charitable institution" in Bianchi v. South Park Presbyterian Church, 123 N.J.L. 325, 330 (E. & A. 1939).[1] That same long-respected authority notes further,
* * * The church function * * * is not limited to sectarian teaching and worship. In modern view, exercises designed to aid in the advancement of the spiritual, moral, ethical and cultural life of the community in general are deemed within the purview of the religious society. * * *.
Such activities are plainly classable as a secondary church function in aid of its primary purpose. They serve as well to exemplify *152 religious doctrine. And, wholly apart from their religious significance, they are essentially charitable in nature as designed to advance the common interest in basal particulars. The vitalization of the spiritual concept of the brotherhood of man  the bond that "makes all men one"  fundamental in the social compact as expressed in our American democracy, is of paramount public concern. * * *. [123 N.J.L. at 332-333; emphasis supplied]
While Bianchi dealt with the use of a church house, appurtenant to the church edifice, for the meeting of a scout troop, and its language is geared to that social purpose as an extension of the primary religious purpose, it is evident that the Bianchi court refused to limit the immunity of the church to parochial activities. The trial judge in the matter before us was satisfied that the situation was controlled by Bianchi. We believe the Bianchi rule is a fortiori here.
Plaintiff leans on the denial of immunity in Sommers v. Union Beach First Aid Squad, 139 N.J. Super. 425 (App. Div. 1976), and Book v. Aguth Achim Anchai of Freehold, N.J., 101 N.J. Super. 559 (App. Div. 1968). But each of these turned (the latter in part at least) upon the fact that the injured plaintiff was not a beneficiary of the works of defendant but rather "one unconcerned in and unrelated to and outside of the benefactions" of defendant. N.J.S.A. 2A:53A-7. Needless to say, the bingo-for-profit in Book is also quite distinguishable from the purpose of the letting in the matter before us.
Plaintiffs' remaining argument is that if defendant's purpose came within the statute, it was the Greek Orthodox Church and not Amelia who was the recipient of defendant's benefactions. The argument is frivolous. We do not tarry long with the metaphysics of the fact that while a church may be a religious and corporate entity, it is not corporeal and receives benefits only as its members or beneficiaries are benefited. Rather, we simply note that Amelia was physically present on the premises of Christ Episcopal Church and was there for the purpose of receiving the benefits being offered. If a spectator at a little league ball game *153 is a beneficiary of the little league's works (Pomeroy v. Little League Baseball of Collingswood, 142 N.J. Super. 471 (App. Div. 1976)), or a wife at a library merely to keep her husband company is, while casually viewing exhibits and maps there on public display, a beneficiary of the society maintaining that building (Peacock v. Burlington Cty. Historical Soc., 95 N.J. Super. 205 (App. Div. 1967), certif. den. 50 N.J. 290 (1967)), or a nonmember spectator guest at a church wedding is a beneficiary of the works of that church (Anasiewicz v. Sacred Heart Church, 74 N.J. Super. 532 (App. Div. 1962), certif. den. 38 N.J. 305 (1962)), or a visitor to a patient at a hospital is a beneficiary of that charitable foundation (Boeckel v. Orange Memorial Hospital, 108 N.J.L. 453 (Sup. Ct. 1932), aff'd o.b. 110 N.J.L. 509 (E. & A. 1933)), then we have no doubt that Amelia was a beneficiary of the works of defendant. We cannot perceive any rational basis for a determination that she is, to the contrary, "one unconcerned in and unrelated to and outside of the benefactions of" defendant. Nor do we need the support of N.J.S.A. 2A:53A-10, i.e., that the immunity statute is remedial and is to be liberally construed, to arrive at this conclusion. Mayer v. Fairlawn Jewish Center, 38 N.J. 549 (1962) and Sommers v. Union Beach First Aid Squad, supra, cited by defendants are readily distinguishable.
Affirmed.
NOTES
[1] Bianchi preceded the statutory enactment at a time when the common law rule obtained. This fact does not at all diminish the relevance of the case. We are satisfied that the statute merely codified the common law rule and that it was the intention of the Legislature to preserve the case law construing the common law rule as demonstrative of its intent in the enactment. Anasiewicz v. Sacred Heart Church, 74 N.J. Super. 532 (App. Div. 1962), certif. den. 38 N.J. 305 (1962).