275 N.J. Super. 594 (1994)
646 A.2d 1130
ELIZABETH MONAGHAN, PLAINTIFF-APPELLANT,
v.
HOLY TRINITY CHURCH, ARCHDIOCESE OF NEWARK, DEFENDANTS-RESPONDENTS, AND XYZ CORPORATION, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued August 23, 1994.
Decided September 14, 1994.
*596 Before Judges VILLANUEVA and RODRIGUEZ.
Joseph G. Monaghan, argued the cause for appellant (Monaghan & Monaghan, attorneys; Mr. Monaghan, of counsel and on the brief).
William A. Cambria, argued the cause for respondents (Mr. Cambria, attorney; Mr. Cambria and Ms. Mulroy, of counsel and on the brief).
The opinion of the court was delivered by VILLANUEVA, J.A.D.
Plaintiff Elizabeth Monaghan appeals from the summary judgment dismissing her personal injury complaint against her parish and Archdiocese, based upon the New Jersey Charitable Immunity Act, N.J.S.A. 2A:53A-7 to -11 (the Act). We affirm.
On May 20, 1990, plaintiff attended a Catholic religious service at Holy Trinity Church, Hackensack ("the parish"). After she exited the church premises and was walking through the parking lot, she allegedly slipped and fell, sustaining personal injuries. The parish is a religious corporation organized pursuant to N.J.S.A. 16:15-1 to -8. The Archdiocese of Newark ("Archdiocese") is a separate and distinct religious corporation organized pursuant to N.J.S.A. 16:15-9 to -17.
Plaintiff's complaint, count one, paragraph 3, alleged that:
[O]n or about May 20, 1990, plaintiff, Elizabeth Monaghan, was lawfully on the above mentioned premises, which were maintained, operated and controlled by the Defendant, Archdiocese of Newark and Holy Trinity Church, or by its servants, *597 agents or employees, in such a careless, reckless and negligent manner or in the alternative in such a careless, reckless and negligent manner by the Defendant so as to create a nuisance, trap, concealed peril and dangerous condition.
During discovery, defendants propounded interrogatories upon plaintiff seeking to define and specify the acts of negligence that plaintiff alleged. Interrogatory 18 was as follows:
Set forth the specific facts which allegedly constitute negligence of the Defendant(s) in this litigation.
ANSWER: Failure to maintain the parking lot in a state of good repair. This includes but is not limited to sealing, patching, resurfacing and taking any and all other steps necessary to maintain a parking lot in a state of good repair.
The parish and the Archdiocese filed a motion for summary judgment. As to the parish, the motion was based on application of the Act and case law regarding charitable immunity. As to the Archdiocese, the motion was also based upon the fact that the Archdiocese did not own, operate or control the premises where the incident occurred and therefore owed no duty to plaintiff. Plaintiff opposed the motion only with respect to application of the Act to the parish; she did not dispute or challenge the position of the Archdiocese.
Although not mentioned in her complaint and not explored during discovery, plaintiff unsuccessfully argued to the trial court that the parish was not entitled to protection of the Act because some unspecified actions of the parish might constitute gross negligence.[1]
After oral argument on the motion, the court granted summary judgment in favor of the parish and the Archdiocese and dismissed the complaint.
*598 On appeal, plaintiff argues that the complaint against the parish should not have been dismissed; she is not pursuing the appeal of the dismissal of the complaint against the Archdiocese.
The Act provides:
No nonprofit corporation, society or association organized exclusively for religious, charitable, educational or hospital purposes shall, except as is hereinafter set forth, be liable to respond in damages to any person who shall suffer damage from the negligence of any agent or servant of such corporation, society or association, where such person is a beneficiary, to whatever degree, of the works of such nonprofit corporation, society or association; ...
[N.J.S.A. 2A:53A-7.]
The public policy which favors protection of charitable institutions is so strong that the Legislature expressly provided that the Act
shall be deemed to be remedial and shall be liberally construed so as to afford immunity to the said corporations, societies and associations from liability as provided herein in furtherance of the public policy for the protection of nonprofit corporations, societies and associations organized for religious, charitable, educational or hospital purposes.
[N.J.S.A. 2A:53A-10.]
The record clearly demonstrates that the parish is precisely the type of organization that the Act was designed to protect.
In order to overcome the charitable immunity, plaintiff must prove that she was totally "unconcerned in and unrelated to and outside the benefactions of [the charitable organization]." N.J.S.A. 2A:53A-7. Whenever an individual is a beneficiary, "to whatever degree," of the works of the charitable organization, he or she is precluded from maintaining a negligence action against that organization.
Case law also reflects the legislative mandate that the Act be considered remedial and be liberally construed so as to provide immunity for the protection of nonprofit corporations organized for religious, charitable, educational or hospital purposes. Schultz v. Roman Catholic Archdiocese of Newark, 95 N.J. 530, 537-38, 472 A.2d 531 (1984). In Bixenman v. Christ Episcopal Church Parish House, 166 N.J. Super. 148, 399 A.2d 312 (App.Div. 1979), we examined situations wherein a plaintiff was *599 found to be a "beneficiary" within the meaning of the Act. Bixenman, like plaintiff herein, was leaving defendant church, after attending church services, when she fell from a platform at the door of the parish house. We stated:
"[T]hen we have no doubt that [the plaintiff] was a beneficiary of the works of defendant."
[Id. at 152-153, 399 A.2d 312.]
Since plaintiff was attending religious services conducted by the parish, she was a beneficiary of the parish. Ibid.; see also Vitolo v. St. Peter's Church, 118 N.J.Super 35, 36-37, 285 A.2d 570 (App.Div.), certif. denied, 60 N.J. 285, 288 A.2d 27 (1972).
"In the civil law there are three degrees of fault or neglect: Lata culpa, gross fault or neglect; levis culpa, ordinary fault or neglect; levissima culpa, slight fault or neglect." 65 C.J.S. Negligence § 8(1), at 536 (1966). Negligence differs from gross negligence only in degree, not in kind. Prosser and Keeton, The Law of Torts § 34 at 212 (5th ed. 1984); Oliver v. Kantor, 122 N.J.L. 528, 532, 6 A.2d 205 (Sup.Ct. 1939), aff'd, 124 N.J.L. 131, 10 A.2d 732 (E. & A. 1940). Tessler and Son, Inc. v. Sonitrol Sec. Systems, 203 N.J. Super. 477, 484, 497 A.2d 530 (App.Div. 1985); Draney v. Bachman, 138 N.J. Super. 503, 511, 351 A.2d 409 (Law.Div. 1976) (cited with approval in Foldi v. Jeffries, 93 N.J. 533, 548, 461 A.2d 1145 (1983)). As such, the trial judge was correct in stating that gross negligence, by definition, is negligence and therefore barred by the Act.
Plaintiff's argument that the Act does not apply to her claim because some unspecified actions of the parish allegedly constitute gross negligence is an obvious attempt to circumvent application of the Act and defeat the immunity that the Legislature clearly made available to the parish. Plaintiff attempts to bolster her argument by relying upon the federal trial court decision in Seiderman v. American Institute for Mental Studies, 667 F. Supp. 154 (D.N.J. 1987), a decision that is not binding upon our state courts. Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 79-80, 577 A.2d 1239 (1990); Linden Motor Freight Co. v. Traveler's Ins. Co., 40 N.J. 511, 518, 193 A.2d 217 (1963); Small v. Department of *600 Corrections, 243 N.J. Super. 439, 444, 579 A.2d 1263 (App.Div. 1990). The Seiderman court failed to consider the history of actions taken by the New Jersey Legislature and drew incorrect conclusions by relying upon decisions of New Jersey courts interpreting judicially-granted immunities. Since New Jersey's law on charitable immunity is mandated by statute, the Seiderman analysis is faulty and we disapprove the decision.
In addressing the issue of whether allegations of gross negligence are barred by the Act, the appropriate authority is not Seiderman, but Schultz v. Roman Catholic Archdiocese of Newark, supra. In Schultz, the Supreme Court granted limited certification to review the issue of negligent hiring under the Act. Schultz, supra, 95 N.J. at 533, 472 A.2d 531. It declined to rule whether charitable immunity applies to allegations other than ordinary negligence, holding that limiting the extent of statutory charitable immunity was properly reserved to the Legislature, not the courts. Id. at 539, 472 A.2d 531. As the Supreme Court noted, the Legislature "`explicitly fix[ed] the State's policy'" regarding charitable immunity when it enacted the Act. Id. at 537, 472 A.2d 531. In the ten years that have elapsed since Schultz was decided, the Legislature has not disturbed the immunity it enacted, although it has extended immunity to additional persons and considered and amended the Act on several occasions.
The Supreme Court's message is clear that immunity which is mandated by statute should be changed only by an amendatory legislative enactment, unlike judicially-granted immunities which can be modified by court ruling. The Schultz court noted a series of decisions in which it modified or eliminated parental or interspousal immunities previously recognized by the common law, but stated clearly that when a statutorily-granted immunity is at issue, the courts should apply the statute as the Legislature intended. Id. at 537, 472 A.2d 531. As Justice O'Hern, writing for the majority in Schultz, noted:
Throughout the nation courts have varied words and theories in order to engraft exceptions onto the charitable immunity doctrine. That was acceptable so long as *601 the doctrine was the creature of common law. It is no longer acceptable, for the Legislature has spoken and has directed the court to interpret the immunity liberally. N.J.S.A. 2A:53A-10.
[Id. at 539, 472 A.2d 531.]
Moreover, the Legislature has had numerous opportunities to consider the issue of statutorily-granted immunities since Schultz was decided. It has enacted a number of statutes in recent years extending immunity as necessary to achieve public policy goals. The Legislature has recognized that exposure to liability can be a deterrent to socially beneficial action, and has taken action to address that problem in a number of different settings, including several amendments to the Act.
For example, in 1986 the Legislature enacted immunity for volunteer athletic coaches, managers and officials of nonprofit or governmental sports teams. N.J.S.A. 2A:62A-6. Significantly, the immunity granted to sports personnel under this statute was limited in that the Legislature specified that immunity would not be granted in cases of willful, wanton, or grossly negligent acts nor in other specified activities.
A 1987 amendment to N.J.S.A. 2A:62A-6 granted immunity to compensated sports officials, but again provided exceptions for gross negligence and for negligent operation of an automobile. N.J.S.A. 2A:62A-6.1. A 1988 amendment extended immunity to team sponsors, and again included exceptions for willful, wanton acts, gross negligence and negligent operation of an automobile. N.J.S.A. 2A:62A-6.2.
In 1986, the Legislature also adopted a statute granting immunity to persons rendering assistance to mitigate the effects of an environmentally hazardous discharge. N.J.S.A. 2A:62A-7. A separate section of the statute excluded gross negligence or intentional misconduct. N.J.S.A. 2A:62A-9. Later that same year, statutory immunity was granted to medical personnel taking breath or bodily substance specimens at the request of law enforcement personnel when exercising "ordinarily required" skill and care. N.J.S.A. 2A:62A-10.
*602 In 1989, the Legislature granted statutory immunity to common interest community associations, except in cases of willful, wanton or gross negligence. N.J.S.A. 2A:62A-12 to -14. In the same year, immunity was granted to persons serving on a local emergency planning committee; exceptions were provided for gross negligence and for negligent operation of a motor vehicle. N.J.S.A. 2A:62A-15. Additional grants of immunity were enacted in 1991 for professional counsellors and persons disclosing information about patients in federal drug or alcohol programs pursuant to court order, with certain exceptions, N.J.S.A. 2A:62A-16, and in 1992 for emergency medical technicians, with exceptions for willful or wanton acts and for negligent operation of a motor vehicle. N.J.S.A. 2A:62A-19.
Even more significantly, the Legislature has amended the Act itself. In 1987, the Legislature enacted N.J.S.A. 2A:53A-7.1, granting immunity to trustees, directors, officers and voluntary members of nonprofit organizations. This legislation also specifically excepted from its grant of immunity willful, wanton or grossly negligent acts and the negligent operation of a motor vehicle. This legislation was amended in 1988 and twice in 1989. In 1988, N.J.S.A. 2A:53A-7.2 was enacted, granting immunity to volunteer trustees and officers of nonprofit blood banks, with the same exceptions. In 1989, N.J.S.A. 2A:53A-7.3 was enacted, granting immunity to public library trustees, "unless the actions evidence a reckless disregard for the duties imposed by the position." Finally, in 1991, the Legislature amended N.J.S.A. 2A:53A-8, modifying the cap on damages payable by hospitals, but not imposing an exception for gross negligence.
The Legislature is assumed to be thoroughly familiar with its own enactments and with statutory interpretations provided by the courts. Yacenda Food Management Corp. v. N.J. Highway Authority, 203 N.J. Super. 264, 273, 496 A.2d 733 (App. Div. 1985); F.M.C. Stores Co. v. Borough of Morris Plains, 195 N.J. Super. 373, 389, 479 A.2d 435 (App.Div. 1984), aff'd, 100 N.J. 418, 495 A.2d 1313 (1985). While legislative silence alone does not *603 necessarily indicate approval of court determinations, it is evidence that the Legislature has approved the judicial construction, especially when the Legislature has amended the statute without expressing disapproval of the court's action. Massachusetts Mutual Life Ins. Co. v. Manzo, 122 N.J. 104, 116, 584 A.2d 190 (1991). Furthermore, a construction that will render any part of a statute superfluous is to be avoided. Paper Mill Playhouse v. Millburn Tp., 95 N.J. 503, 521, 472 A.2d 517 (1984).
By amending the Act to add immunity for certain individuals who provide socially beneficial services through nonprofit, religious or charitable organizations, the Legislature has reinforced its mandate that the immunity provided to those organizations should be liberally construed. By providing exceptions for gross negligence and for willful or wanton misconduct when extending immunity to individuals in recent years, the Legislature has further signalled its approval of the Schultz interpretation that, absent legislative action to the contrary, the immunity conferred by the Act should not be narrowly applied. Clearly, if a grant of immunity left the grantee liable for gross negligence, there would have been no need for the Legislature to provide those exceptions.
The Legislature has recognized that there can be different levels of negligence, with the highest level designated as gross negligence, and it has chosen to except gross negligence from statutory grants of immunity where it deems it appropriate. By granting immunity from gross negligence in some instances and excepting it from grants of immunity in others, the Legislature has made a public policy determination that must be respected by the courts called upon to interpret these statutory enactments.
Despite its close attention to grants of immunity and ample opportunity to make changes as it deems necessary, and in spite of the Supreme Court's invitation in Schultz to consider doing so, the Legislature has not changed the immunity granted under N.J.S.A. 2A:53A-7 to provide an exception for gross negligence even though it has amended the Act several times since Schultz.
*604 It is significant that the Legislature has generally chosen to make exceptions for gross negligence when extending immunity to individuals, but has not done so when the immunity is extended to institutions such as religious or nonprofit organizations under N.J.S.A. 2A:53A-7 or hospitals under N.J.S.A. 2A:53A-8.
This statutorily established public policy is consistent with the Legislature's expressed intent in N.J.S.A. 2A:53A-10 that the immunity granted by the Act is to be liberally construed so as to afford immunity to the greatest extent possible "for the protection of nonprofit corporations ... organized for religious, charitable, educational or hospital purposes." To construe an exception for gross negligence not expressly stated in the Act would disregard this explicit legislative mandate. So, too, to permit a plaintiff to circumvent or avoid the protection given by the Act merely by making unspecified allegations of gross negligence would render the protection of the Act so ineffective as to be virtually meaningless. This is clearly not what the Legislature intended; indeed, it is precisely the opposite of what the Legislature mandated in clear and direct terms.
Based on the mandate the Legislature has provided and the history of its actions since Schultz, it is clear that the immunity of the Act extends protection against allegations of gross negligence.
Our interpretation of the Act is not unlike our interpretation of the Worker's Compensation Act in Bryan v. Jeffers, 103 N.J. Super. 522, 248 A.2d 129 (App.Div. 1968), certif. denied, 53 N.J. 581, 252 A.2d 157 (1969), where we held that "the exception for `intentional wrong' in the statute eliminating tort liability, as between persons in the same employ, where the injury sued for is compensable by workmen's compensation, N.J.S.A. 34:15-8, is equatable with `gross negligence,' or similar concepts importing constructive intent." We noted that "the policy objective sought by the 1961 amendment would not be attained if the exception for `intentional wrong' were construed to leave open a loophole for *605 such actions against fellow employees in the guise of claims for `gross negligence.'" Id. at 523, 248 A.2d 129.
Affirmed.
NOTES
[1] Indeed, at oral argument plaintiff's opposition to the summary judgment motion was essentially a plea for additional discovery time in an effort to attempt to discover some evidence that would justify a claim of gross negligence. The court indicated that if gross negligence was an issue in the case, he "would certainly deny the motion on the basis that there is a factual issue as to whether or not [at this time] there's gross negligence in this case."