# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1779-22

C.P.,[1]

     Plaintiff-Respondent,

v.

THE GOVERNING BODY OF
JEHOVAH'S WITNESSES and
FAIRLAWN CONGREGATION
OF JEHOVAH'S WITNESSES,

     Defendants-Respondents,

and

WATCHTOWER BIBLE AND
TRACT SOCIETY OF NEW
YORK, INC. and EAST
HACKENSACK
CONGREGATION OF
JEHOVAH'S WITNESSES[2],

     Defendants-Appellants.

_____

> **APPROVED FOR PUBLICATION**
>
> **November 15, 2023**
>
> **APPELLATE DIVISION**

Submitted October 12, 2023 – Decided November 15, 2023

Before Judges Currier, Firko, and Susswein.

---

[1]  We use initials and pseudonyms to protect the privacy of plaintiff, an alleged victim of sexual abuse.

[2]  Improperly pled as Hackensack Congregation of Jehovah's Witnesses.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5508-21.

K & L Gates, LLP, attorneys for appellants (Anthony P. La Rocco, Dana Beth Parker, and Reymond E. Yammine, on the briefs).

Rayna Elizabeth Kessler (Robins Kaplan LLP) and Elizabeth Cate (The Zalkin Law Firm, PC) of the New York bar, admitted pro hac vice, attorneys for respondent Corinne Pandelo (Rayna Elizabeth Kessler and Elizabeth Cate, on the brief).

Child USA and Victims' Recovery Law Center, attorneys for amicus curiae Child USA and The National Center for Victims of Crime (Alice Rose Nasar Hanan and Keith West, on the brief).

Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, attorneys for amicus curiae New Jersey Association for Justice (Eric G. Kahn, of counsel and on the brief; Annabelle Moskol Steinhacker, on the brief).

The opinion of the court was delivered by

FIRKO, J.A.D.

On leave granted in this child sexual abuse case, defendants Watchtower Bible and Trust Society of New York, Inc. (Watchtower) and East Hackensack Congregation of Jehovah's Witnesses (Hackensack Congregation) (collectively defendants) appeal from the January 3, 2023 Law Division order denying their motion for summary judgment. For the reasons that follow, we affirm.

I.

A-1779-22

2

Viewed in the light most favorable to defendants, <u>Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh</u>, 224 N.J. 189, 199 (2016), the pertinent facts are as follows. From the mid-1970's to 1988, plaintiff C.P. was sexually abused by her paternal grandfather, "Charles," now deceased. When the abuse started, she was only three years old. Plaintiff reported the abuse to her parents who contacted law enforcement. Charles was criminally prosecuted for sexual misconduct and incarcerated. During the years Charles sexually abused plaintiff, Watchtower authorized him to serve as an elder at East Hackensack and Fairlawn.

In 1994, plaintiff filed an initial lawsuit against Charles, "Olive," her paternal grandmother, and her parents[3] based on the alleged sexual abuse by Charles.[4] Plaintiff filed a second amended complaint alleging Charles breached his duty of care by "sexually touching and fondling" her as an infant; that her parents and Olive were negligent while she was in their care; that Olive knew or should have known Charles would sexually abuse plaintiff; that Olive and plaintiff's parents knew or should have known Charles had a "propensity" to engage in fondling and improper touching of young females and failed to protect

---

[3] Plaintiff dismissed her parents from the lawsuit prior to the jury verdict.

[4] A third-party complaint was filed by Charles and Olive against Fireman's Fund Insurance Company, which is not germane to our decision.

her; Charles inflicted emotional distress upon plaintiff; Olive and plaintiff's parents acted intentionally and/or recklessly in failing to protect her from Charles and claims of assault and battery. Plaintiff sought compensatory and punitive damages.

Plaintiff did not name defendants in the initial lawsuit. A jury awarded plaintiff compensatory and punitive damages against Charles. The claims against Olive were dismissed. We affirmed on direct appeal. CP-1 v. CP-3, No. A-2897-99 (App. Div. Oct. 18, 2001).

In 1995, the Charitable Immunity Act (CIA), N.J.S.A. 2A:53A-7 to -11, was amended to expose nonprofit, educational, and religious institutions to liability stemming from willful, wanton, or grossly negligent conduct resulting in sexual abuse. N.J.S.A. 2A:53A-7(a). In 2006, the CIA was again amended to provide an exception to immunity for negligence claims where the supervision, hiring, and retention of an employee, agent, or servant led to sexual abuse. N.J.S.A. 2A:53A-7.4.

In addition, as we have recently stated, "In 2019, the New Jersey Legislature enacted the Child Victims Act (CVA), L. 2019, c. 120, which supplemented and amended the statute of limitations in civil actions for sexual abuse claims and expanded the categories of potentially liable defendants." Doe v. The Estate of C.V.O., ___ N.J. Super. ___, ___ (App. Div. 2023) (slip op. at

2).  "The CVA created two new statutes of limitations for actions at law for injuries resulting from the commission of sexual crimes, which both became effective on December 1, 2019."  Id. at ___ (slip op. at 3).

Pertinent to this appeal is the enacted statute of limitations, which provided a two-year revival window for victims to file otherwise time-barred claims for sexual crimes committed against them while minors.  N.J.S.A. 2A:14-2(b).  This statute of limitations expanded the time for filing claims for "certain sexual crimes," permitting minor victims to file claims "within [thirty-seven] years after the minor reaches the age of majority, or within seven years from the date of reasonable discovery of the injury . . . whichever date is later."  N.J.S.A. 2A:14-2(a).  The statutes similarly permits actions arising from sexual crimes committed against minors, including: "sexual assault, any other crime of a sexual nature, a prohibited sexual act . . . , or sexual abuse as defined in [the CSAA]."  N.J.S.A. 2A:14-2(a).  "The CVA also supplemented the CSAA discovery period provision, providing that it is subject to N.J.S.A. 2A:14-2(a)".  Doe, ___ N.J. Super. at ___ (slip op. at 3).

The CVA also amended the CIA to allow additional and retroactive liability for non-profit organizations established for religious, charitable, educational, or hospital purposes.  N.J.S.A. 2A:53A-7 (creating additional liability); N.J.S.A. 2A:14-2(b) (creating retroactive liability).  Thereafter,

plaintiff filed a new complaint in the Law Division alleging sexual abuse as defined in the CSAA against defendants. The 2021 complaint alleges seven causes of action: negligence; negligent supervision; negligent retention; negligent failure to train relating to child abuse; intentional infliction of emotional distress; negligent infliction of emotional distress; and sexual abuse and battery. Plaintiff seeks compensatory and punitive damages against defendants.

According to plaintiff, defendants knew Charles had engaged in sexual conduct with at least three minors—including herself—but did not discipline him and negligently retained him as an elder—a spiritual leader and mentor. Plaintiff claims defendants knew incidents of sexual abuse by their agents was prevalent within their organizations but nevertheless protected Charles and other sexual abusers from criminal prosecution through "mandated secrecy" policies and practices. Plaintiff also alleges defendants owed a "special duty" to protect her from her grandfather's sexual criminal acts because they held themselves out as "being able to provide a safe environment" for children. Ultimately, plaintiff contends Charles was disfellowshipped—excommunicated as a result of reports about and his admission to sexual misconduct, and therefore, defendants engaged in willful, wanton, or grossly negligent conduct.

Defendants moved for summary judgment, arguing the 1994 lawsuit was fully litigated, and thus, the entire controversy doctrine (ECD) and judicial estoppel barred the 2021 action.[5] Defendants argued plaintiff's 1994 litigation asserted the same causes of action as alleged in her 2021 complaint for negligent infliction of emotional distress, negligence, and intentional and/or reckless infliction of emotional distress. Defendants asserted plaintiff was aware of these causes of action in 1994 but failed to join them as parties even though her claims stemmed from allegations of abuse by Charles. Defendants maintained if plaintiff's 2021 complaint stands, and she prevails, it will result in a double recovery because plaintiff was awarded $1,778,874.93 in compensatory damages and interest and $500,000 in punitive damages in the 1994 suit. Defendants also posit they are prejudiced because of the spoliation of evidence and that the 2021 complaint is barred by judicial estoppel because plaintiff is taking a position "contrary to the one she successfully litigated in 1994."

In opposition to defendants' motion, plaintiff argued she was not required to join them in the 1994 action, and the ECD is inapplicable because her 2021 complaint asserts causes of action that were "either unknown, [not yet viable], or unaccrued" in 1994. Furthermore, under the version of the CIA that existed

---

[5] Defendant Fairlawn Congregation of Jehovah's Witnesses cross-moved for summary judgment seeking dismissal of plaintiff's 2021. It did not appeal from the order denying its motion.

A-1779-22

in 1994, defendants were immune from negligence claims. In addition, plaintiff asserts defendants have failed to show substantial prejudice as a result of her instituting the 2021 litigation, and they have not specifically identified any evidentiary problems, such as lost evidence, a witness with a faded memory, or demonstrated how Charles's death prejudices their defense. Plaintiff asserts the ECD does not apply because the 2021 action against defendants is for "negligently hiring, retaining, and supervising [Charles] . . . who they knew or should have known was a child molester," whereas the 1994 action was essentially for claims of intentional and negligent conduct by her grandfather.

In reply, defendants averred plaintiff's 2021 complaint includes a claim for intentional conduct that was not subject to immunity under the CIA in 1994. Defendants argued the 1994 and 2021 actions "arise from identical facts," and Charles was the sole source of her alleged injuries and damages.

On October 21, 2022, the motion court conducted oral argument on the motion and reserved decision. On January 3, 2023, the court denied defendants' motion for summary judgment and issued a comprehensive written decision. The court concluded "there remains open and disputed issues of material fact" because plaintiff's current claims in the 2021 complaint against defendants were "prohibited" under the CIA in 1994. The court reasoned the CIA amendment

"was not made retroactive until 2019," which was "years" following the judgment in the 1994 action.

The court found the ECD did not apply to bar claims that were "unknown," or "unaccrued" when the initial action was filed. It concluded plaintiff's 2021 complaint was not barred under the ECD, because Rule 4:30A did not mandate party joinder in 1994. The court noted defendants failed to show "substantial prejudice" resulting from their non-joinder in the 1994 action.

The court rejected defendants' judicial estoppel argument because plaintiff's 2021 complaint did not allege "contrary positions" from those asserted in the 1994 complaint. In particular, the court highlighted the 1994 action alleged Charles caused plaintiff's injuries, and the 2021 action alleged something distinctly different, specifically defendants, in their capacity as agents, were responsible for her injuries. The court found plaintiff's decision not to include defendants in the 1994 action was not "inexcusable conduct" preventing their joinder in the 2021 action because the claims were not feasible at the time under the CIA. The court was satisfied that plaintiff would not achieve a "double recovery" if the 2021 complaint were permitted to stand. A memorializing order was entered. We granted defendants leave to appeal.

On appeal, defendants reprise their arguments made before the court and seek reversal of the order denying their motion for summary judgment.

Defendants claim the ECD bars plaintiff's present action; the court erred in holding it was excusable for plaintiff to not include defendants in the 1994 litigation because the claims were not cognizable under the CIA; and judicial estoppel precludes plaintiff's present litigation and attempt at a double recovery. We granted leave to Child USA and the National Center for Victims of Crime (NCVA) and New Jersey Association for Justice (NJAJ) to file amici curiae briefs, which support plaintiff's contentions.

## II.

A court's ruling on summary judgment is reviewed de novo, subject to the Rule 4:46-2 standard governing summary judgment motions. Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A. 189 N.J. 436, 445-46 (2007). And "'[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.'" Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Accordingly, summary judgment should be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). To determine whether there is a genuine issue of

material fact, all legitimate inferences from the facts are drawn in favor of the non-moving party. Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (App. Div. 2016) (citing R. 4:46-2(c)).

## A.

The ECD is found in Rule 4:30A, which reads in relevant part: "Non-joinder of claims required to be joined by the [ECD] shall result in the preclusion of the omitted claims to the extent required by the [ECD] . . . ." This doctrine "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman and Stahl, P.C., 237 N.J. 91, 108 (2019) (quoting Cogdell ex rel. Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 15 (1989)). It "seeks to impel litigants to consolidate their claims arising from a 'single controversy' whenever possible." Thornton v. Potamkin Chevrolet, 94 N.J. 1, 5 (1983) (internal citations omitted).

In evaluating whether certain claims must be asserted in the same action, our initial inquiry is whether they "arise from related facts or the same transaction or series of transactions." Dimitrakopoulos, 237 N.J. at 109 (citing DiTrolio v. Antiles, 142 N.J. 253, 267 (1995)). The claims are not required to have common legal issues for the ECD to bar the subsequent claim. Ibid. "[T]he determinative consideration is whether distinct claims are aspects of a single

larger controversy because they arise from interrelated facts." DiTrolio, 142 N.J. at 271.

Nevertheless, the ECD "remains an equitable doctrine whose application is left to judicial discretion based on the factual circumstances of individual cases." Dimitrakopoulos, 237 N.J. at 114 (quoting Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009)). "[A] court should not preclude a claim under the [ECD] if such a remedy would be unfair in the totality of the circumstances and would not promote the doctrine's objectives of conclusive determinations, party fairness, and judicial economy and efficiency." Id. at 119.

The "polestar of the application of the rule is judicial 'fairness.'" DiTrolio, 142 N.J. at 272 (quoting Reno Auto Sales, Inc. v. Prospect Park Sav. and Loan Ass'n, 243 N.J. Super. 624, 630 (App. Div. 1990)). "In considering whether application of the doctrine is fair, courts should consider fairness to the court system as a whole, as well as to all parties." Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 605 (2015). "Fairness in the application of the [ECD] focuses on the litigation posture of the respective parties and whether all of their claims and defenses could be most soundly and appropriately litigated and disposed of in a single comprehensive adjudication." DiTrolio, 142 N.J. at 277. "In considering fairness to the party whose claim is sought to be barred, a court must consider

whether the claimant has 'had a fair and reasonable opportunity to have fully litigated that claim in the original action.'" Gelber v. Zito P'ship, 147 N.J. 561, 565 (1997) (quoting Cafferata v. Peyser, 251 N.J. Super. 256, 261 (App. Div. 1991)).

Of significance, in 1998, our Court amended Rule 4:30A to restrict the scope of the ECD. The 1998 amendment limited the reach of the ECD to non-joinder of claims, as opposed to the pre-1998 formulation of non-joinder of claims and parties. Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:30A (2024). In other words, "[p]reclusion of a successive action against a person not a party to the first action has been abrogated except in special situations involving both inexcusable conduct . . . and substantial prejudice to the non-party resulting from omission from the first suit." Ibid.; see also R. 4:5-1(b)(2).

The 1998 amendment to Rule 4:30A has been interpreted to retroactively apply to matters pending at the time of the amendment. Hobart Bros. Co. v. Nat'l Union Fire Ins. Co., 354 N.J. Super. 229, 242 (App. Div. 2002). Therefore, this 1998 amendment is the applicable rule here because the 1994 action was pending at the time of the amendment. Hence, plaintiff was not required to sue defendants in the 1994 action under Rule 4:30A, as amended in 1998.

Moreover, the ECD does not bar "claims either unknown, unrisen or unaccrued at the time of the original action."  Pressler & Verniero, Current N.J. Rules, cmt. 3.3 on R. 4:30A (2024).  When plaintiff filed her 1994 action, the CIA granted immunity from negligence claims to nonprofit institutions "organized for religious, charitable, educational or hospital purposes."  Monaghan v. Holy Trinity Church, 275 N.J. Super. 594, 604 (App. Div. 1994).

However, the CIA was amended in 2006—after the 1994 litigation concluded—to exclude from immunity claims for "negligent hiring, supervision or retention against a person under the age of [eighteen] who is a beneficiary of the nonprofit organization."  N.J.S.A. 2A:53A-7.4 (2005).  This amendment initially only applied prospectively, N.J.S.A. 2A:53A-7.5 (2005), but was made retroactive by the Legislature in 2019.  N.J.S.A. 2A:14-2(b); S. Judiciary Comm. Statement to S. Comm. Substitute for S. 477, at 3 (March 7, 2019) ("[O]rganizational liability for an act of negligently hiring, supervising, or retaining a person resulting in abuse against a child could be applied retroactively in lawsuits for abuse occurring prior to the effective date . . . .").

Thus, plaintiff's negligence claims against defendants were not cognizable in 1994 because the CIA as it then existed did not permit claims against them as they were immune from intentional conduct.  See Monaghan, 275 N.J. Super. at 598.  The claims not pled by plaintiff against defendants in the 2021 complaint

were not cognizable until 2006 when the CIA was amended to extend liability retroactively. Therefore, plaintiff could not sue defendants until after the CIA was amended and the CVA revived the statute of limitations.

Plaintiff included two intentional tort claims—intentional infliction of emotional distress and sexual abuse and battery—in her 2021 complaint. Defendants assert that the CIA did not immunize them from those claims at the time the 1994 action was litigated. Once discovery is completed, defendants may renew their motion as to those claims and the court will determine whether plaintiff was aware of her claims against defendants during the 1994 litigation and should have amended her complaint accordingly.

"The traditional rule is that a cause of action accrues on the date when 'the right to institute and maintain a suit,' first arises." Russo Farms v. Vineland Bd. of Educ., 144 N.J. 84, 98 (1996) (quoting Rosenau v. City of New Brunswick, 51 N.J. 130, 137 (1968)). And a cause of action based on sexual abuse accrues "at the time of reasonable discovery of the injury and its causal relationship to the act of sexual abuse." N.J.S.A. 2A:61B-1. Discovery is necessary here to determine when and whether plaintiff discovered defendants' connection to Charles at the time of the abuse.

Defendants also contend the court erred by finding it was excusable for plaintiff not to include them in the 1994 action. Under the ECD, a successive

action will be dismissed for a failure to comply with the requirements in Rule 4:5-1(b)(2) only where "the failure of compliance was inexcusable and the right of the undisclosed party to defend the successive action was . . . substantially prejudiced by not having been identified in the prior action." R. 4:5-1(b)(2).

As the trial court found, the two litigations involve separate claims. The 1994 action sought damages for harm directly inflicted by Charles; the 2021 action seeks damages from defendants for claims of negligent hiring and retention, alleging defendants knew and allowed Charles—a known child abuser—to serve as an elder in their church, exposing children to sexual molestation.

We are also unpersuaded by defendants' argument that they are substantially prejudiced because of spoliation of evidence related to Charles's demise and loss of evidence due to the passage of time. "Substantial prejudice" as provided in Rule 4:5-1(b)(2) "means substantial prejudice in maintaining one's defense." Mitchell v. Charles P. Procini, D.D.S., P.A., 331 N.J. Super. 445, 454 (App. Div. 2000). Typically, this requirement is met when witnesses become unavailable, memories have faded, and evidence is lost. Ultimately, "[t]he phrase 'substantial prejudice' is used in Rule 4:5-1(b)(2) as a limitation on the court's exercise of the power of dismissal as a sanction" and is "consistent with our general preference for addressing disputes on the merits and reserving

A-1779-22

dismissal for matters in which those lesser sanctions are inadequate." Kent Motor Cars, Inc., 207 N.J. at 447. Defendants have not provided any specific instances of prejudice. Therefore, they have not shown substantial prejudice under Rule 4:5-1(b)(2), and their motion for summary judgment under the ECD was properly denied.

B.

We next consider defendants' argument that the doctrine of judicial estoppel bars plaintiff's 2021 action. In order to protect the integrity of the court system, "[w]hen a party successfully asserts a position in a prior legal proceeding, that party cannot assert a contrary position in subsequent litigation arising out of the same events." Kress v. La Villa, 335 N.J. Super. 400, 412 (App. Div. 2000). The doctrine has been summarized as follows: "The principle is that if you prevail in Suit #1 by representing that A is true, you are stuck with A in all later litigation growing out of the same events." Kimball Int'l Inc. v. Northfield Metal Prods., 334 N.J. Super. 596, 607 (App. Div. 2000) (quoting Eagle Found, Inc. v. Dole, 813 F.2d 798, 810 (7th Cir. 1987)).

However, judicial estoppel is not a favored remedy, because of its draconian consequences. It is to be invoked only in limited circumstances:

> It is . . . generally recognized that judicial estoppel is an "extraordinary remedy," which should be invoked only "when a party's inconsistent behavior will otherwise result in a miscarriage of justice." Ryan

Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3d Cir. 1996) (quoting Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 424 (3d Cir. 1988)) (Stapleton, J., dissenting); see also Teledyne Indus., Inv., 911 F.2d at 1218 ("Judicial estoppel is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement."). Thus, as with other claim and issue preclusion doctrines, judicial estoppel should be invoked only in those circumstances required to serve its stated purpose, which is to protect the integrity of the judicial process.

[Kimball Int'l. Inc. v. Northfield Metal Prods., 334 N.J. Super. at 608 (footnote omitted).]

In Ali v. Rutgers, 166 N.J. 280 (2000), our Court quoted with approval the above language from Kimball, affirming that judicial estoppel is an "extraordinary remedy." Ali, 166 N.J. at 288.

Against that legal backdrop we are satisfied the trial court correctly found that judicial estoppel was inapplicable to these circumstances. As stated, plaintiff alleged Charles sexually abused her in the 1994 litigation. In the 2021 action, plaintiff asserts new and different causes of action against defendants arising from Charles's acts—that their negligent hiring and supervision of him—caused her injuries. These claims differ from plaintiff's assertion in the 1994 action that largely addressed Charles's sexual abuse. Therefore, judicial estoppel does not apply.

Moreover, dismissing the case on judicial estoppel grounds would defeat the Legislature's intent in creating a new statute of limitations for child victims who endured sexual abuse before enactment of the CVA, which resurrected claims under the CIA.

## C.

In their amici curiae briefs, Child USA, NCVA, and NJAJ argue the Legislature's intent behind Chapter 120, which encompasses the CVA, "was to broaden judicial access to victims of sexual abuse." Amici stress amendments passed in conjunction with Chapter 120 to the CSAA, CIA, and Tort Claims Act[6] work in tandem to broaden and sanction access for legal recourse to victims of sexual abuse, who "suffer[ed] in silence for decades." In W.S. v. Hildreth, a case interpreting Chapter 120, amici argue our Court considered the broadening effects of these amendments and found the Legislature intended broad application. W.S. v. Hildreth, 252 N.J. 506, 524 (2023). For these reasons, amici support affirmance of the court's denial of summary judgment.

Any of defendants' arguments we have not expressly addressed are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

---

[6] N.J.S.A. 59:1-1 to 12-3.

Affirmed.  We remand the matter to the trial court for further proceedings.

We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1779-22